W. W. HAYS, *as Sheriff*, v. JOHN V. FARWELL & CO. *et al.*

1. CHATTEL MORTGAGES — *Concurrent Liens — Conversion — Joinder of Plaintiffs.* Where the mortgagees of two chattel mortgages, executed, delivered and filed simultaneously upon the same personal property, agree that the liens thereof shall be concurrent, the mortgagees become thereby tenants in common of the property so mortgaged, and may join in an action for the unlawful conversion of the same.

2. INSTRUCTIONS — *Construction.* Instructions are to be considered and construed together as a whole, and, if not erroneous when so construed, no one of them will be held erroneous.

*Error from Sedgwick Court of Common Pleas.*

THIS was an action commenced by *John V. Farwell & Co.* and L. D. Skinner against *W. W. Hays,* as sheriff, to recover $10,000 damages for an alleged taking and conversion of goods and merchandise. The plaintiffs claimed the goods by virtue of two promissory notes, one of which, for $38,613.23, was held and owned by the firm of John V. Farwell & Co., the other, for $6,450, by the State National Bank of Wichita, of which L. D. Skinner is the cashier. The first-named note was executed by the firm of W. J. Wilson & Co., signed both in the firm name and by the individual members, to J. V. Farwell & Co. The second note was executed by the same payers to L. D. Skinner, cashier. Each note was secured by a chattel mortgage upon a stock of merchandise at Wichita, in this state, owned by W. J. Wilson, the head of the firm of W. J. Wilson & Co. The other two members of said firm were George R. Chumasero and W. E. Wilson, the latter being a minor son of W. J. Wilson. The defendant, who is the sheriff of Sedgwick county, levied upon the goods under an order of attachment in his hands, issued in a civil action brought against W. J. Wilson & Co. by Blumenthal Bros. & Co., upon an account for goods sold and delivered. The defense was, aside from the question of misjoinder of plaintiffs, that the circumstances under which the mortgage of J. V.

Farwell & Co. was executed were such as to make it invalid as against the attachment levy.

Among others, the court instructed the jury as follows:

"If the chattel mortgages in question were executed by the said W. J. Wilson & Co. with the intent to hinder, delay and defraud their creditors, and the plaintiffs participated in such intent, and did not take such mortgages and the possession of said goods in good faith and for the purpose of securing valid debts, but for the purpose of aiding the said W. J. Wilson & Co. to defraud their other creditors, then the defendant had the right to attach the goods."

"3. If you believe from the evidence that the Farwell mortgage was for an amount largely in excess of the amount owing to Farwell & Co. by Wilson & Co., you may consider such fact as evidence of fraud; and if you further find that this was done for the purpose of hindering, delaying or defrauding other creditors of Wilson & Co., this would amount to fraud, and render the mortgage void as to other creditors of Wilson and Co.

"4. If Farwell & Co. wrote the letter of the date of August 20, 1887, in evidence, and gave the same to Wilson with the intention that the same should be used by Wilson to obtain credit, and the statements in said letter in relation to the financial character and ability were false and known to be false by Farwell & Co., and Wilson showed this letter to Blumenthal Bros. & Co. for the purpose of inducing the latter to sell him goods on credit, and Blumenthal believed the statements in said letter to be true, and on the faith thereof sold the goods to Wilson charged for in the attachment suit of Blumenthal Bros. & Co., you must find for the defendant."

"10. The fact that J. V. Farwell & Co. gave W. J. Wilson the letter which has been introduced in evidence will have no bearing upon the right of the plaintiff to recover in this action, unless you find that said letter was given by said J. V. Farwell & Co. with the intent and for the purpose of enabling the said Wilson to buy goods on credit, and also given by said J. V. Farwell & Co. with the knowledge that the statements made in said letter were not true."

The plaintiffs recovered a verdict for $3,788.75, and the defendant's motion for a new trial was overruled, and judgment rendered for the amount of the verdict against him, and the defendant brings the case to this court.

*Campbell & Dyer*, for plaintiff in error:

We think there can be no serious contention on the proposition that the plaintiffs had no joint interest in the proceeds of the property. It is true they had a joint possession of the goods, but this is not an action for the possession. It is an action for the value of the goods. The plaintiffs have specified interests in the proceeds, but not a joint interest. This case is very like *Jeffers v. Forbes*, 28 Kas. 174. The case of *Winfield Town Company v. Maris*, 11 Kas. 128, is directly in point, both on the proposition that in order for two or more persons to join as plaintiffs there must be a joint interest, and, also, that where plaintiffs have no joint interest, it is not a question either of defect of parties or misjoinder of causes of action. In such cases, the misjoinder affects the right of action. Where it appears on the face of the petition, the demurrer is general that the petition does not state facts sufficient to constitute a cause of action. See, also, *Palmer v. Waddell*, 22 Kas. 352.

The instructions given at the instance of the plaintiffs, taken as a whole, "are so confused by the manner of statement, with erroneous propositions, they could give the jury no just idea of the law applicable to the case they were considering. Some of them consist largely of the reasoning to be found in the opinions of courts, and, as argument in the particular cases, were all proper enough, but are not proper to be addressed to a jury in other and essentially different cases." *Ludwig v. Sager*, 84 Ill. 100.

See, also, *Hair v. Little*, 28 Ala. 248; *Wafer v. Harvey County Bank*, 46 Kas. 611; *Feineman v. Sachs*, 33 id. 635; *Cavender v. Robertson*, 33 id. 627; *U. P. Rly. Co. v. Fray*, 31 id. 749.

Even if there was evidence tending to show the fact of a sale, the court had no right to assume it as proved. *Jones v. Field*, 3 S. Rep. (Ala.) 893.

Contradictory and confusing instructions, some of which are not applicable to the facts, cannot be regarded as harmless.

*Douglas v. Wolf,* 6 Kas. 88; *Simmerlot v. Hamilton,* 22 N. E. Rep. (Ind.) 973; 77 Ill. 377; 35 Mo. 457; 61 Iowa, 240; 10 Neb. 284.

*Edwin White Moore,* for defendants in error:

Where mortgages are given simultaneously, or where there is an agreement that the liens thereof shall be concurrent, the mortgagees become thereby tenants in common of the property mortgaged. It is held that the legal effect is the same as if the goods had been mortgaged to the mortgagees by one instrument, to be held by them as security for their respective claims. The mortgagees in such a case may sue for conversion jointly. 1 Jones, Mort., § 607; Jones, Ch. Mort., § 50; *Welch v. Sackett,* 12 Wis. 270; *Hill v. Gibbs,* 5 Hill, 56; Dicey, Parties to Actions, 382, 508; *Corbin v. Kincaid,* 33 Kas. 653; *Noyes v. White,* 9 id. 640.

In *Jeffers v. Forbes,* 28 Kas. 179, the court says:

"This does not assimilate an action in which the possession of the land owned in common is disturbed, for there each of the owners is alike interested in the possession. Jointly interested in the possession, they may jointly sue for any disturbance of their possession."

The instruction of the court, to the effect that it was necessary for the defendants to show both that the letter was given by Farwell & Co. for the purpose of enabling Wilson to buy goods on credit, and, also, that they must have known the statements contained in it to be false in order to justify a verdict for the defendant, was correct. If Farwell & Co. honestly believed the statements contained in the letter to be true, there could be no fraud on their part.

A good deal is made, in the argument of the defendant, of a statement made in the third instruction, to the effect that an insolvent debtor may sell all of his property and apply the proceeds thereof to the payment of one or more of his creditors as he may see fit. This, it will be observed, is said at the close of the instruction, merely by way of illustration. The

issues in the case in hand were fully and clearly and repeatedly stated in other portions of the instructions.

Objection is made by the plaintiff in error to the seventh instruction, and also to the ninth instruction, relative to the sale of the mortgaged property by the mortgagees subsequently to the taking of the mortgages. It is sufficient to say, upon this point, that no effort was made at the trial to impeach the fairness of such sale.

The opinion of the court was delivered by

HORTON, C. J.: It is insisted that the plaintiffs below had no joint interest in the property or the proceeds thereof, and, therefore, that there was such a misjoinder of plaintiffs, and such a variance between the allegations of the petition and the proof, that the objections to the testimony and the demurrer thereto should have been sustained. The proof showed that the notes and mortgages were all executed on the same day and filed at the same time, and that there was a verbal agreement between Farwell & Co. and Skinner that the liens should be concurrent. It is the rule that where two or more parties have a joint interest in personal property which is injured, or if the right interfered with is a right possessed by two or more in common, they must all join in an action for the interference with it.

"The concurrent execution and delivery of two chattel mortgages upon the same property, to different parties, makes the mortgagees tenants in common of the property mortgaged, and they should join in an action for the unlawful taking or the conversion of it." (*Welch v. Sackett*, 12 Wis. 243; *Hill v. Gibbs*, 5 Hill, 56.)

1. Chattel mortgages — concurrent liens — conversion — joinder of plaintiffs.

We think, therefore, that under the evidence offered, the plaintiffs below had such a joint interest in the property converted as permitted them to jointly bring the action, and that there was no fatal variance between the allegations of the petition and the proof.

It is next insisted that the instructions of the court were

erroneous and misleading. In August, 1887, Wilson went to Chicago to see Farwell & Co., to whom he was indebted in a large amount. They agreed upon a plan by which the creditors of Wilson & Fox, of whom Farwell was the largest, would release Fox and take Wilson alone. It was also arranged to form the partnership of W. J. Wilson & Co. At Chicago, Farwell & Co. drew up and gave to Wilson a letter, of which the following is a copy:

"JOHN V. FARWELL & CO., CHICAGO, NEW YORK, MANCHESTER, PARIS.
CREDIT DEPARTMENT.

CHICAGO, August 20, 1887.

"GENTLEMEN: After examining thoroughly the affairs of Messrs. Wilson & Fox, of Wichita, Kas., we are of the opinion that the contemplated dissolution of partnership will be for the benefit of all parties concerned. We are satisfied that, after the dissolution, Mr. W. J. Wilson will have a surplus of at least $25,000 in his business, and we are entirely willing to release T. L. and J. B. Fox, and hold our present claim against Wilson & Fox against W. J. Wilson only. Yours truly,          JOHN V. FARWELL & CO."

Afterward, at Wilson's solicitation, this letter was signed by J. H. Walker & Co. Wilson went from Chicago to New York. It is claimed by defendant that he showed the Farwell letter to Blumenthal Bros. & Co., of whom Wilson & Fox had ordered, in the spring of 1887, a bill of goods amounting to about $2,000; that by the letter Wilson induced them to ship the goods ordered by Wilson & Fox to W. J. Wilson & Co., and also to sell him on credit a bill of goods which was afterward delivered to Wilson & Co., but Wilson denied that he showed the letter to Blumenthal Bros. & Co., or that he spoke to them about it. The court gave various instructions requested by the plaintiffs below and the defendant excepted. If the instructions given were not sufficiently definite, or if they did not apply to the precise evidence developed upon the trial, other instructions should have been requested. All of the instructions requested by the defendant, excepting one, which was modified so that the jury "might consider the circumstances therein referred to as evidence of

fraud," were given. Farwell & Co., without any knowledge of or consent thereto, could not be held responsible by their letter "for other false statements made by W. J. Wilson to the Blumenthals in New York city as to his financial condition or pecuniary ability." This case differs materially in many of its aspects from the Wafer case, 46 Kas. 597. In that case, it was found that the insolvent debtor obtained goods from the attaching creditors by false and fraudulent means; that the goods were received by the debtor on the 17th day of March, 1884; that the chattel mortgage was given to the bank, the antecedent creditor, within three days thereafter; and that the letter of the antecedent creditor induced the attaching creditors to give the insolvent debtor credit and sell him goods. In this case, Wilson denied that he showed the letter of Farwell & Co. to Blumenthal Bros. & Co., or that he obtained any credit or goods from them thereby.

The chattel mortgages were not executed until the 3d of February, 1888, six months after the date of the letter, and long after the goods had been received by Wilson & Co., and not until the season for the sale of fall and holiday goods had passed. The debt from Wilson & Co. to Farwell & Co. increased between August, 1887, and February, 1888, about $9,000, an amount much more than Blumenthals' debt, while 40 per cent. of the latters' debt had been paid. On the 13th of December, 1887, Wilson & Co. sent Blumenthal Bros. & Co. a check for $500, and suggested in their letter containing the check that they had "bought too many nice cloaks," and asked "them to help them out of some of them." This was an intimation that they were willing to let them take them back again. Then, again, the evidence of Wilson, Harding and Fox all tended to prove the good faith of Farwell 2. Instructions— & Co. in writing the letter. Criticism may be construction. made upon some of the instructions given, if considered separately, but all of the instructions should be construed together. In this light, no one was prejudiced thereby.

Upon the merits of the case, the claim of defendant below was, "that Wilson perpetrated his fraud when he purchased

the goods from the Blumenthals; that he obtained them under false pretenses; that his fraud was consummated; that the giving of the mortgages did not aid him in doing that, but it was the giving of the letter of August 20, 1887, by Farwell & Co.;" and further, that on account of the false statements contained in that letter and the knowledge thereof by Farwell & Co., the latter could not accept or obtain a chattel mortgage upon the goods of Wilson & Co. adverse to the attachment lien of the Blumenthals.

The following instruction, which was given, covers all the material facts of the claim so made:

"If Farwell & Co. wrote the letter of the date of August 20, 1887, in evidence, and gave the same to Wilson with the intention that the same should be used by Wilson to obtain credit, and the statements in said letter in relation to the financial character and ability were false and known to be false by Farwell & Co., and Wilson showed this letter to Blumenthal Bros. & Co. for the purpose of inducing the latter to sell him goods on credit, and the Blumenthals believed the statements in said letter to be true, and on the faith thereof sold the goods to Wilson charged for in the attachment suit of Blumenthal Bros., you must find for the defendant."

The jury found for plaintiffs below, and therefore all conflicting evidence must be resolved in their favor.

In one view of the case, the tenth instruction might be complained of; but this instruction was followed by the one just quoted, which permitted the defendant below to defeat the Farwell mortgage, if the letter of August 20, 1887, was known by Farwell & Co. to be false, and was given to Wilson for the purpose of obtaining credit, whether that credit was for the purpose of releasing Fox & Son or used to obtain goods. This instruction really covers all that was claimed. We do not think it necessary to comment further.

The judgment will be affirmed.

All the Justices concurring.