A. T. & S. F. Rld. Co. v. Elder.

THE ATCHISON, TOPEKA & SANTA FE RAILROAD
COMPANY v. P. P. ELDER, *as Administrator of the
estate of E. E. Fuller, deceased.*

No. 8880. .

1. NEGLIGENCE — *burden of proof on Railroad Company to show
derailment not preventable by human prudence or foresight.*
In an action by an administrator to recover damages for injuries
resulting in the death of his intestate, by the negligent derailment
of a railroad train on which he was a passenger, where the ap-
pointment of the administrator is admitted by the pleadings, it
devolves upon the plaintiff in the first instance only to prove the
derailment, the injury of the passenger thereby, that death oc-
curred from the injury, and that the deceased left a widow or
kindred surviving him; and it then becomes incumbent upon the
railroad company, in order to escape liability, to show that the
derailment resulted from inevitable accident, or something against
which no human prudence or foresight on the part of the company
could provide.

2. —————— *evidence sufficient and errors immaterial.* The evi-
dence examined, and *held* sufficient to uphold the verdict and the
judgment, and that there was no material error in the rulings of
the Court thereon, nor in the refusal to submit certain particular
questions of fact, nor otherwise.

*Error from Osage District Court.*
*Hon. William Thomson, Judge.*

AFFIRMED.                         OPINION FILED OCTOBER 10, 1896.

ON October 24, 1890, at about 1 : 42 P. M., the west-
bound passenger train of the plaintiff in error was de-
railed and wrecked a short distance before reaching
the depot at Wakarusa in Shawnee County,—the road
at that point running nearly north and south. The
train left Topeka about 10 minutes late, but it had
made up very little, if any, of the time, before the
disaster ; yet it was running on a down grade at least
45 miles per hour at the time of the derailment. As
to this train, Wakarusa was not a stopping point. A
short distance north of that place the train passed

over a three degree curve, a tangent about 200 or 300 feet in length, and over the greater part of a five degree curve where the derailment occurred. The train consisted of the engine and tender,—the engine remaining on the track and standing upright with the tender trucks, or part of the same; a mail car, derailed and turned on its side; a baggage car and an express car, turned bottom side up and on different sides of the track; a smoking coach, which remained upright but across the track; a day coach, turned partially on its side to the right; a chair car, turned on its side to the right; a sleeper and a tourist sleeper, turned on their sides to the right. These last four remained coupled; but the couplings of the others were broken, and the baggage and express cars and the day coach were quite a distance from the engine and the mail car. The body of the tender, although heavily laden with coal and water, was thrown to the left a distance of 20 to 40 feet from the track and turned bottom side up, and was found opposite the sleeper. The distance from the first wheel-marks on the ties to the pilot of the engine was 1263 feet. The road-bed was ballasted with rock; but the evidence for the plaintiff tends to show that there were a good many unsound ties, and that the inner side of the outside rail on the five degree curve was much worn so as to be considerably lighter than the inside rail. The evidence is conflicting as to the elevation of the outside above the inside rail on the curve. The track was badly torn up by the wreck and many of the ties were broken and split. About 35 of the passengers were injured more or less.

E. E. Fuller was a passenger, and occupied a seat on the left or east side of the aisle of the day coach. He was not thrown from it, nor apparently injured by

the derailment.   The southwest corner of the coach
fell the lowest.   A colored man was thrown down in
the aisle and slightly injured, but no other person was
apparently hurt in that coach.   Rev. Bernard Kelly
was in it, and he and Fuller got out of windows on
the right hand or west side.   They helped some other
passengers out and then went to the chair-car; but
finding the door closed Fuller kicked it open; Kelly
assisting the passengers over the door to the platform,
while Fuller helped them to alight from the platform
to the ground.   Both worked with their coats off —
the day being pleasant.   This work occupied from 10
to 30 minutes, after which Fuller sat down and re-
clined against an apple tree near by.   While in that
position, N. Frankhouser, an acquaintance, passing,
asked as to his condition, and he said he was hurt
and reached around to his back or side to indicate the
place of injury.   He was sweating freely.   Late in
the afternoon a relief train took the passengers, in-
cluding Fuller, back to Topeka, where he remained
over night at the National Hotel.   During the fore-
noon of the next day he called on Doctor Wasson, a
dentist, who was an old acquaintance, and told him
that he had escaped unhurt.   Later in the day he
went to Emporia and thence to Quenemo in Osage
County — his place of business — where he boarded
with his sister, Clara M. Crawford.   He complained
to her about his back hurting him and she gave him
arnica and hot water to take to his room.   She testi-
fied that he was in good health before the wreck, but
afterward he stooped and limped; although she ad-
mitted that he suffered from hemorrhoids before the
wreck.   He complained to others of a pain in his side
and back.   Remaining several days at Quenemo, he
went thence to his home at Kansas City, Missouri,

where he arrived about 10 days after the wreck. Mrs. Fuller testified that when he came home he was very pale and nervous and was suffering; that she examined the small of his back and found a black and blue spot across there about the size of her finger and noticed a great discoloration. She treated the ailment with hot water and arnica. Much evidence was given tending to show Fuller's changed condition after the wreck; — his lameness and other indications of failing health. He had been an active business man, and continued at work much of the time until a month before his death, which occurred April 27, 1891. It appeared, however, that Fuller had been greatly afflicted with hemorrhoids at times, the same having become chronic, and during his last illness a rectal abscess formed. Indeed he seemed to have a complication of disorders. Several physicians treated him and inquired as to the history of his case, but he never mentioned the wreck to them; and his principal attending physician in his last sickness did not know of it until his death. He made no complaint to the Railroad Company, and did not prefer any claim against it. His last sickness was of about four weeks' duration. He was unconscious during the latter part of his illness and died in a comatose condition. The testimony of the medical witnesses is conflicting as to whether the symptoms — described at much length in the evidence — did or did not indicate a spinal injury.

Fuller left surviving him his widow and two children. P. P. Elder, his father-in-law, was duly appointed administrator, and on September 12, 1891, commenced his action in the District Court of Osage County alleging that Fuller was injured by reason of the negligence of the Railroad Company, that he died

from the effects of such injury, and claiming the sum of $10,000 as damages resulting from his death. The case was twice tried; the second trial resulting in a judgment in favor of the plaintiff below, June 28, 1892, for $3,000 and costs of suit; and this proceeding in error is instituted to reverse said judgment. Other facts appear in the opinion.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plaintiff in error.

*Pleasant & Pleasant,* and *J. W. Deford,* for defendant in error.

MARTIN, C. J.  I.  Some of the allegations of negligence find no support in the evidence; but it was alleged that the tender was not sufficiently and properly secured and fastened to its trucks; that the track was in bad order and condition and unsafe for trains running at the excessive speed at which the train in question was propelled on a sharp curve; that the ties were decayed, the rails worn and too light, and the outer rail on the curve was nearly level with the inner rail, whereas it should have been considerably higher. There is no evidence of the insufficient fastening of the body of the tender to the trucks except the circumstance that it left them, turned upside down, and was thrown 20 to 40 feet to the left of the track. There is some evidence, however, as to the defective condition of the track in some of the particulars above named, and we are not clear that this condition had no agency in producing the disaster to the train. The witnesses for the Company did not account for the derailment, but said it was a mystery. Under the pleadings and the allegations of negligence contained in the petition it devolved upon the plaintiff below in the first instance

1. Negligence, burden of proof.

only to prove the derailment, the injury of the passenger thereby, that death occurred from the injury, and that the deceased left a widow or kindred surviving him ; and it then became incumbent upon the Company, in order to escape liability, to show that the derailment resulted from inevitable accident or something against which no human prudence or foresight on the part of the Company could provide. *S. K. Rly. Co. v. Walsh*, 45 Kan. 653, 659 and cases cited ; *Mo. Pac. Rly. Co. v. Johnson*, 55 id. 344, 345. A *prima facie* case of negligence was made out by the plaintiff below, and we cannot say in the face of the general verdict that it was overthrown by the evidence introduced on the part of the Railroad Company.

II.  The plaintiff in error contends that there is no evidence that Fuller was injured in the wreck, nor that his death was attributable thereto.  The conduct of Fuller seems difficult to comprehend.  In the excitement attending such a calamity it is not strange that a person might be injured without knowing it for a considerable time thereafter ; but Fuller told Doctor Wasson the next day that he escaped unhurt. He never made any claim against the Railroad Company, and did not mention the wreck to his physicians ; although he complained of a pain in the side or back to Frankhouser shortly after the wreck, to his sister upon his arrival at Quenemo, and to his wife shortly afterward in Kansas City.  Nothing in the nature of narrative from him was admissible in evidence as to the cause of the pain in his back or side, as to his lameness, or as to other symptoms indicating a spinal injury or other ailment ;

2. Evidence sufficient and errors immaterial.

but, from the complication of disorders to which he was subject and which seemed to be greatly aggravated in the closing months of his

life, it seems probable that he did not himself consider the railroad wreck, but *la grippe*, as the cause of his increased suffering. Yet it may have been a spinal injury ; and his symptoms were perhaps better evidence than his own opinion respecting his ailment. The general verdict is equivalent to finding that Fuller was injured in the wreck and that death resulted therefrom ; and we cannot affirm that this theory is entirely unsupported by the evidence, especially after the approval of the verdict by the trial court. Many questions are raised upon the competency of evidence, the form of the hypothetical questions, and the nature of the expert testimony. We have examined all of them, but do not think that any substantial and material error was committed by the Court in the admission or rejection of testimony. The Court refused to submit certain of the particular questions of fact requested by the defendant below. We think some of them might have been submitted with propriety ; but they were not controlling in character, and if all had been answered in the manner most favorable to the plaintiff in error the general verdict would not have been affected, nor the trial court nor this Court further enlightened thereby. Upon the whole we find no material error in the record and the judgment must be affirmed.

ALLEN, J., concurring.

JOHNSTON, J. (dissenting). Any one who reads the evidence in the record must entertain the gravest doubts as to whether Fuller was injured in the wreck or his death caused by it. For several years previous to the wreck he had suffered from hemorrhoids and from diseases of the stomach, bowels, and kidneys. During this time he had been treated by various phy-

sicians for his ailments, and before and after the wreck had been seriously affected with *la grippe.* These diseases became more aggravated as time passed ; and although he was treated by several phy-sicians they were unable to arrest the progress of the diseases, and he suffered with them until he died. There is no direct evidence that he was injured in the· wreck. He was not thrown from his seat by the de-railment, and nothing said or done by him at the time· indicated that he had suffered any injury. It is true that, after breaking in the door of one of the coaches and assisting to lift passengers out of coaches that were overturned, he complained of his back ; but with--in a few days thereafter, at different times and in the presence and hearing of several persons, he described the wreck and repeatedly said that he had escaped unhurt. Afterward he consulted his family physician in regard to the disorders from which he was suffer--ing, and was treated by him ; but he never mentioned the fact that he was in the railroad wreck or that he· was suffering from any hurt which he had received. The physician who attended him in his last illness in-terrogated him as to accidents or injuries, but he said nothing about being injured in a railroad wreck nor· that he had been in one. He was seriously sick and was endeavoring to obtain relief. The physicians who attended him from time to time during the six months between the accident and his death were try-ing by inquiry and personal examination to ascertain the cause and extent of his illness. If Fuller was in--jured in the wreck it was strange indeed that he did not mention it to his physicians. At the time of the· wreck the agents of the Company personally inter-viewed the passengers for the purpose of ascertaining the names of those who had been injured ; but no·

claim was made by Fuller at that time that he had sustained any injuries by reason of the wreck, nor did he ever suggest that he had a claim against the Company. Assuming that there was some testimony tending to support the verdict, all must concede that it is very slight and unsatisfactory. In view of this state of the case, some of the rulings of the trial court which are clearly erroneous are prejudicial, and seem to me to require a reversal.

The plaintiff below undertook to show by expert testimony that the death of Fuller resulted from the accident and injury. A hypothetical question embracing some of the facts respecting the accident, which the plaintiff undertook to prove, was submitted to a medical witness who was asked whether or not in his judgment the injury caused the death of Fuller. He answered that in his judgment he died from the injury; but an inquiry developed that his opinion was not based upon the facts stated in the hypothical question, but upon statements made to him by Mrs. Fuller about the time of her husband's death. It does not appear that the statements were made in the presence of Mr. Fuller nor that he had any knowledge of them. The cause of his death was the important question in the trial; and the opinion of this witness, based, not upon the facts stated in the hypothetical question, but upon hearsay testimony, was, over objection, permitted to go to the jury. Within the rule of *A. T. & S. F. Rld. Co. v. Frazier*, 27 Kan. 463, an opinion resting upon such a basis was inadmissible, and its reception material error. See also, Rogers on Expert Testimony, §§ 46 and 47.

The Railroad Company called witness Meade, who had special knowledge and skill with reference to railroad tracks, and interrogated him with reference to

the cause of the accident. The plaintiff below then introduced a witness named Titus, and inquired if he had heard the testimony of the witness Meade; and, upon his testimony, Titus was asked what in his opinion caused the derailment and wreck of the train, and over objection, he answered that "It was caused by the oscillation of the train through the high velocity passing over the line as defined by Mr. Meade." The witness Meade had testified as to what he saw at the place of the wreck, and had given his inferences and conclusions from what he saw; but in the end admitted that the cause of the wreck was a mystery to him. An expert may give an opinion upon facts assumed to be established, and upon possible or probable facts in the case; but no rule of evidence will permit a witness to give an opinion upon the inferences and conclusions of another expert. The testimony thus obtained was not so material to the case as that respecting the cause of death, but it should have been excluded from the jury.

The trial court refused to submit to the jury a special question as to whether Fuller had not, on the day following the accident, admitted to Doctor Wasson that he was not injured in the wreck. One of the principal questions in controversy was whether Fuller had suffered an injury in the wreck; and a subsequent admission of that character bore directly upon the question in controversy and was a material fact in the case. There was abundant evidence tending to show that such an admission was made, and the question should have been submitted to the jury.

The Court also refused to submit questions to the jury as to whether Fuller had not called at the general offices of the Company subsequent to the accident but had never presented a claim or demand

against the Company for injuries suffered. These questions were pertinent to the issues, and should have been submitted. The fact that answers to them most favorable to the Company might not have been sufficient to overthrow the verdict, does not determine the sufficiency of the questions nor prevent their submission. In general, it is error to refuse to submit questions material to the case and based upon competent testimony.

For these reasons the judgment of the Court below should be reversed.