The judgment of the district court will be affirmed.

---

THE ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY
v. G. R. BURROWS.

**No. 11,650.** (61 Pac. 439.)

| | |
|---|---|
| 62 | 89 |
| 64 | 114 |
| 62 | 89 |
| e66 | 190 |
| 62 | 89 |
| 73 | 361 |
| f74 | 246 |
| 62 | 89 |
| 77 | 617 |
| 77 | 619 |

1. RAILROADS — *Injury to Passenger — Burden of Proof.* In an action by a passenger against a common carrier to recover for personal injuries received while traveling in a conveyance of the latter, proof of the accident and plaintiff's injury casts the burden on the carrier to free itself from the presumption of negligence. The gist of the action being the negligence of the defendant, the above rule is not applicable in such suit against a railway company where the evidence introduced by the plaintiff shows that the accident resulted from an act of God, unavoidable casualty, or from causes not connected with the construction, operation or maintenance of the railway.

2. ——— *Contributory Negligence — Question for Jury.* Whether it is an act amounting to contributory negligence for a passenger, traveling in the caboose of a freight-train, to stand up and lean forward to expectorate in a stove, while the train is in motion, should be left to the jury.

3. FINDINGS — *Erroneous Instruction.* It is error for the court to instruct the jury that their answers to particular questions of fact submitted should be consistent with one another. (*Brick Co. v. Zimmerman*, 61 Kan. 750, 60 Pac. 1064.)

4. RAILROADS — *Evidence of Injury.* The case of *A. T. & S. F. Rld. Co. v. Johns*, 36 Kan. 769, 14 Pac. 237, as to the admissibility of complaints of an injured person concerning the presence of existing pain, followed.

5. ———— *Instruction Criticized.* An instruction criticised in which the jury were told that before the defendant could avail itself of a plea of contributory negligence it must establish the facts pleaded in defense.

Error from Cherokee district court; A. H. SKID-MORE, judge. Opinion filed June 9, 1900. Reversed.

### STATEMENT.

IN his petition in the court below plaintiff alleged the following facts, in substance : That on the 28th day of February, 1898, he purchased a ticket for first-class passage over defendant's railroad from Hallo-well, Kan., to Columbus, Kan.; that, while riding on a freight-train upon its regular run, and on which it was the custom and habit to carry passengers, he was injured by reason of the negligence of defendant, its agents and employees; that the train, while traveling at the rate of from ten to fifteen miles per hour, came to a short, sudden and abrupt stop and caused him to be thrown down and forward, thereby seriously breaking his left arm just above the wrist, by which fall his back was wrenched and twisted and his left side bruised, thereby inflicting upon him permanent injury, etc. The answer of the railroad company contained a general denial and an allegation of contributory negligence on the part of plaintiff below.

The testimony of plaintiff below, in which he gave an account of the accident and how it occurred, we have extracted from the record, and it is as follows :

"Ques. Now, where were you when they started? Ans. I was sitting down when they started.

"Q. Now go right on and tell, Mr. Burrows, what took place, how far they had run when it took place, if anything did, and all about it. A. Well, they had run about a quarter, I guess—

"Q. Go right on. A. About a quarter of a mile, or somewheres near that, and they were going fast or

down grade, and they just lit right out; then all to once they just stopped as sudden as if they had run against a mountain.

"Q. Now state to the jury just the position you were in at the time they stopped, as you have stated, or just about.   I wish you would just show the jury the position you occupied all the time.   (Counsel brings seat and places before the jury, and witness uses same for illustration.)   A. Well, I was sitting right down close, middling close, to the stove, and as the train started off I might have been sitting there a second or two, or a half a minute, or something like that—I could n't tell just how long I was sitting there.   And I raised up to look around to see whether I could see any place to spit.   I chew tobacco.   I did n't want to spit on the floor, and I raised up to spit in the stove—

"Q. Go right on, Mr. Burrows, and state.   A. I went to spit, and I looked around to see if there was any spittoon, and there was n't none there, and I just merely raised up and braced myself in that way (indicating) to spit; and there was a sudden check or stop came, and I went over and broke my arm."

As to the position plaintiff was in when he fell, he testified as follows :

"Ques.   You looked around on the dirty floor to find some place to spit and could n't find any?   Ans. I did.

"Q. Then you rose up and about this position for to brace yourself with your left foot, and put yourself in the position to spit in the stove?   (Counsel indicates position on seat before the jury.)   A. Yes, sir.

"Q. And you were in about the position then that I am now?   A. Somewheres near that.

"Q. Well, very nearly that, is it not?   A. Well, I do n't know—yes.

"Q. Was that the position you were in when on your direct examination?   A. Yes, sir.

"Q. Your face was about two and one-half feet from the floor?   A. Well, I could n't tell how far it was.

"Q. And your left arm was about one and one-half feet from the floor? A. I don't know how far it was.

"Q. That is the position that I am in now? A. I don't know whether it was or not, exactly.

"Q. That is as near as you can remember? A. No; if you put your hand back there I can remember.

"Q. Back here? (Counsel puts left hand back on seat.) A. That is where it was.

"Q. Your left hand back on the seat? A. Yes, sir.

"Q. Then your face was about two and one-half feet from the floor, and the left hand was against the seat, your left foot extended to brace you, and was in that position when you fell? A. Yes, somewheres near that position.

"Q. That is as near as you can now state it? A. Yes, sir.

"Q. Now, about how far were you from the stove? A. Well, I was probably two feet; may be not quite so far.

"Q. West of it? A. I was west of it.

"Q. And about how far north of it were you? A. Well, I wasn't very far north. It was pretty close.

"Q. Now you say when the train suddenly stopped you fell between the stove and the seat. A. Between the stove and the seat.

"Q. Now, after you had fallen to the floor, how soon thereafter did you see the drummer? A. Well, I seen him just as soon as I fell down on the floor; and there he came to me, and I was trying to get up; he came and helped me up. I could not get up myself, I was hurt so, with one hand and the train was running.

"Q. Now, Mr. Burrows, after the sudden stop and fall which you say you met with and the injury you received, what did the train then do? A. It ran right on.

"Q. Just kept up and went on east? A. Just went right on east. According to my judgment the train was running at a speed of from ten to fifteen miles an hour when the accident happened.

Railroad Co. v. Burrows.

"Q. You say the drummer assisted you to your feet after you fell there? How did he do it. A. Why, he got up and got around me, I could not tell you just how; but he catched hold of me around me and says he, 'Are you hurt?' I says, 'Yes, my back.' I think I said my back and arm was hurt.

"Q. Now, you say that when you fell in the car you fell with your head to the east, to the eastward? A. Right to the east, eastward, yes.

"Q. Fell between the seat and the stove? A. Yes, sir.

"Q. The car was neat and clean and tidy? A. Not very.

"Q. It wasn't clean; it was dirty inside? A. Yes, sir, on the floor."

There was no evidence introduced on behalf of the defendant railway company. The jury, in answer to particular questions of fact, found that plaintiff was fifty-six years old and of sound mind and judgment; that the train was not moving when he got on, and the caboose had arrived at the depot at that time; that the plaintiff had been on the train five or ten minutes before the accident occurred, and it was moving at the time of the injury at least ten miles an hour; that plaintiff fell towards the engine; that there were seats in the caboose that plaintiff might have occupied; that the accident would have occurred if plaintiff had been sitting down; that the train was a quarter of a mile from the depot when the accident happened; that plaintiff had traveled on freight-trains and knew that there was more or less jar and jolt in the handling of the same; that he did not tell the conductor that there was no use of making any report of the accident; that he was on the north side of the car west of the stove when the injury occurred; that he was not standing up in the car and was not injured by an unavoidable accident; that the train was running be-

tween Hallowell and Sherwin when the accident occurred, and that the conductor knew plaintiff was on the train; that some member of the train crew was negligent, but the evidence did not show which one, and that the negligence consisted of improper handling of the train; that plaintiff was not injured by reason of the running in or out of the slack of the train; that the train was not handled in the usual and ordinary manner, in that it was suddenly and violently stopped; that the crew might have been competent, but they were not careful at the time of plaintiff's injury; that they could not tell which member of the crew was not careful and competent; that the sudden stopping of the train was the direct and proximate cause of the injury.

There was a general verdict for the plaintiff below, with answers returned to particular questions of fact, upon which judgment was rendered by the court. A motion for a new trial was overruled.

*J. W. Gleed, J. L. Hunt,* and *D. E. Palmer,* for plaintiff in error.

*C. A. McNeill, Chas. Stevens,* and *Chas. Smith,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: Plaintiff in error earnestly contends that the trial court erred in overruling its demurrer to the evidence for the reason that the testimony introduced by plaintiff below raised no presumption of negligence on the part of the railroad company or its servants in the operation of the train. It cites authority to the effect that if the accident occurred under circumstances which might be attributable to causes unavoidable on the part of the railroad company,

Railroad Co. v. Burrows.

mere proof of plaintiff's injury is insufficient to make a *prima facie* case of negligence against the carrier.

We have carefully examined the cases cited, together with others involving this question, and conclude that the rule of evidence in cases of injury to a passenger is in accord with the decision of this court in *A. T. & S. F. Rld. Co. v. Elder*, 57 Kan. 312, 316, 46 Pac. 311. An accident resulted in death. The deceased left a widow and next of kin surviving him. The court said :

1. Presumption of negligence — burden of proof.

"Under the pleadings and the allegations of negligence contained in the petition, it devolved upon the plaintiff below in the first instance only to prove the derailment, the injury of the passenger thereby, that death occurred from the injury, and that the deceased left a widow or kindred surviving him ; and it then became incumbent upon the company, in order to escape liability, to show that the derailment resulted from inevitable accident or something against which no human prudence or foresight on the part of the company could provide. (*S. K. Rly. Co. v. Walsh*, 45 Kan. 653, 659, 26 Pac. 45, and cases cited ; *Mo. Pac. Rly. Co. v. Johnson*, 55 id. 344, 345, 40 Pac. 641.)

If the testimony introduced on behalf of the plaintiff in such cases should develop that the injury resulted from an act of God, unavoidable casualty, or from causes not connected with the construction, operation or maintenance of the railroad, then the burden of proof would not shift to the defendant to account for the accident, for the explanation itself (made by the plaintiff) would exonerate the carrier from the charge of negligence. The gist of the action is want of care on the part of defendant. A presumption of negligence in such cases arises not from the fact of the injury alone, but from its cause or the

circumstances attending it; and if such circumstances as detailed in the testimony introduced by the plaintiff should show, for instance, that he was shot through a window by a person distant from the track, or that the train was struck by lightning, that he fell down while the train was standing still, or that the accident happened in some other manner wholly beyond the control of the carrier or its servants, there would be no presumption of negligence for the defendant to rebut, for the reason that the plaintiff had, in his account of the accident, disproved the charge of negligence made by him. The railroad company being held to the highest degree of care which human prudence or foresight can provide, it is sufficient in this class of cases to show *prima facie* that the injury was occasioned by the failure of some portion of the machinery, appliances or means provided for the transportation of passengers, or any other thing which the carrier can and ought to control as a part of its duty to carry passengers safely. (*Meier v. The Pennsylvania Railroad Co.*, 64 Pa. St. 225.) A presumption of negligence arises from the occurrence of an accident alone when it proceeds from an act of such character that, when due care is taken in its performance, no injury ordinarily ensues from it in similar cases, or where it is caused by the mismanagement or misconstruction of a thing over which the defendant has immediate control, and for the management or construction of which he is responsible. (*Transportation Company v. Downer*, 11 Wall. 129, 20 L. Ed. 160.)

In *Gleason v. Virginia Midland Rld. Co.* 140 U. S. 435, 444, 11 Sup. Ct. 862, 35 L. Ed. 463, this question was considered by the supreme court of the United States. The accident in that case occurred by reason of a landslide in a railway cut, caused by an ordi-

nary fall of rain. It was held that an injury to a passenger, caused by the train coming in contact with the earth which had fallen down upon the track, raised a presumption of negligence on the part of the railway company, and threw the burden of proof of showing that the slide was in fact the result of causes beyond the control of the railway company upon the latter. In passing on the question, the court said :

"The law is that the plaintiff must show negligence in the defendant. This is done *prima facie* by showing, if the plaintiff be a passenger, that the accident occurred. If that accident was in fact the result of causes beyond the defendant's responsibility, or of the act of God, it is still none the less true that the plaintiff has made out his *prima facie* case. When he proves the occurrence of the accident, the defendant must answer that case from all the circumstances of exculpation, whether disclosed by one party or the other. They are its matter of defense. And it is for the jury to say, in the light of all the testimony, and under the instructions of the court, whether the relation of cause and effect did exist, as claimed by the defense, between the accident and the alleged exonerating circumstances." (See, also, Law. Pres. Ev. 128.)

We think the plaintiff below, by the testimony offered in his behalf, brought the case within the established rule, and that when he rested, a *prima facie* charge of negligence had been made out, which the railway company was called on to meet in order to overcome the presumption against it.

Nor can we hold, as a matter of law, that the plaintiff below was guilty of contributory negligence. This question was one for the jury. (*A. T. & S. F. Rld. Co. v. Hughes*, 55 Kan. 491, 40 Pac. 919.)

2. Contributory negligence— question for jury. We cannot say, from the fact that plaintiff below leaned over toward the stove

to spit, that he was guilty of an act of negligence. This is not an uncommon thing to do. Railroads recognize the general use of tobacco, both for smoking and chewing, by running smoking-cars on all passenger-trains and by furnishing their coaches with cuspidors. Plaintiff was riding in a caboose attached to a freight-train, and it is not quite clear from the testimony what his position was immediately before he was injured, but it would seem that he had assumed a crouching position, with one hand on the seat to brace himself. In *Beaver v. A. T. & S. F. Rld. Co.*, 56 Kan. 514, 43 Pac. 1136, it was said:

"In an action to recover for personal injuries, where the defense is contributory negligence on the part of the plaintiff, the court cannot take the case from the jury and determine as a matter of law that the plaintiff was negligent where the standard of care required of him was a subject upon which different opinions might be entertained, and where the facts shown and inferences to be drawn from them were such that reasonable minds might differ with respect to whether he had acted as a reasonably prudent man should have done under the circumstances."

The degree of care required on the part of a railway company toward a passenger traveling in the caboose of a freight-train was considered in *Mo. Pac. Rly. Co. v. Holcomb*, 44 Kan. 332, 24 Pac. 467.

Objection is made to the reception of testimony of professional and lay witnesses relating to complaints of plaintiff with regard to the existence of his pain and suffering communicated to them after the accident. Counsel for plaintiff below, in propounding questions upon this point, brought themselves strictly within the rule stated in *A. T. & S. F. Rld. Co. v. Johns*, 36 Kan. 769, 14 Pac. 237, and inquired concerning the presence of

4. Personal injury
— evidence
of pain.

existing pain, and the answers given were responsive to such questions. There was no error in the admission of such testimony.

Particular questions of fact were submitted to the jury on behalf of the defendant to be answered, and one of the instructions relative thereto was the following :

"Your answers to these questions, if any, should be consistent each with the other, and should be answered, in the event that your verdict is for the plaintiff, in the light of the testimony, after due consideration thereof, and under the rules of law given you in this case."

**3 Inconsistent findings—erroneous instruction.**

There was error in this direction to the jury. It was not their duty to reconcile the answer of any particular question of fact with another, but to answer each question in accordance with the preponderance of evidence bearing upon the fact involved in the interrogatory. (*Brick Co. v. Zimmerman*, 61 Kan. 750, 60 Pac. 1064, and cases cited.) This erroneous instruction compels a reversal of the cause, and, in view of another trial, we think that the following instruction is subject to criticism.

"The plea of carelessness and want of due care and caution on the part of the plaintiff is an affirmative plea tendered by the defendant, and, before it can avail itself of the relief in such plea sought, it must establish by the fair weight of the evidence the facts stated in such allegation and defense."

By this direction the jury might have been misled into the belief that if the plaintiff, by testimony offered in his behalf, had shown contributory negligence upon his part, the same could not avail the defendant, because the fact of such contributory negligence was not

**5. Contributory negligence—erroneous instructions.**

established by the company. A similar instruction was passed on and criticized in *Railway Co. v. Merrill*, 61 Kan. 671, 60 Pac. 819.

Again, the court instructed the jury that if they found that the plaintiff, by reason of his carelessness and negligence, as alleged by the defendant in its answer, occasioned the injury, then there could be no recovery. In the answer it was alleged that the injury was occasioned *wholly* by the plaintiff's own carelessness and negligence. It would thus follow from the instruction that the plaintiff might nevertheless recover, although his injury was occasioned partly through his own negligence. The instruction was misleading.

The judgment of the court below will be reversed and a new trial ordered.