THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY V. J. M. BRANDON.

No. 15,446. (95 Pac. 573.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Injury to a Passenger—Burden of Proving Negligence.* Where a *prima facie* case is made out within the rule stated in *S. K. Rly. Co. v. Walsh*, 45 Kan. 653, 26 Pac. 45, in favor of a passenger injured by the derailment of the train upon which he was riding, it devolves upon the railway company, in order to be relieved from liability, to show that the accident could not have been avoided by the exercise of the utmost human prudence and foresight.

2. INSTRUCTIONS—*Construction.* Instructions should be considered and construed together as a whole, and the instructions given in this case, when so considered, were not misleading and placed no unreasonable or impracticable burden upon the railway company.

3. NEGLIGENCE—*Allegations Supported by Findings.* The findings of the jury that the spikes were loose in the ties, and that in making use of soft-wood ties, not sufficient to hold the spikes, the railway company failed to use the best methods of keeping its track and road-bed in safe and proper condition, support the allegations of negligence in the petition.

4. DAMAGES—*Excessive—Remittitur.* The rule that judgment may be entered for a reduced sum, and accepted by the pre-

vailing party, where passion or prejudice of the jury is not shown, stated in *U. P. Rly. Co. v. Mitchell*, 56 Kan. 324, 43 Pac. 244, is followed.

5. PRACTICE, SUPREME COURT—*Unsigned Memorandum Indorsed on Findings of Jury.* An unsigned memorandum indorsed upon the findings of a jury, not referred to therein, and not in response to submitted questions, cannot be considered by this court as a part of the findings, in the absence of any action requested or taken thereon in the district court.

Error from Jewell district court; RICHARD M. PICK-LER, judge. Opinion filed April 11, 1908. Affirmed.

STATEMENT.

THIS was an action brought by J. M. Brandon against the railway company to recover damages for injuries received by him while a passenger on one of the railway company's cars and caused by a derailment of a portion of the train. The car in which Brandon was riding left the rails and ran for about 700 feet upon the ties. The plaintiff claimed that he received injuries to his spine, hip, and chest, and was otherwise injured. The defendant contended that it was not guilty of any negligence, and therefore was not liable for the accident. The jury found for the plaintiff in the sum of $1998, and the defendant brings the case here.

It appears from the evidence that most of the ties were of soft wood, and some of oak. The ties were in ballast at the place of the derailment; the track was straight, and of new 80-pound rails. No tie was loosened on account of the derailment, but the spikes were bent back and forced down into the ties. Six days before the accident the track had been regaged and again spiked upon the old ties because one of the rails had been pushed out a little.

The railway company predicates error upon the refusal of the court to direct a verdict for the defendant, in refusing judgment in its favor on the findings of the jury, and in giving the following instructions:

"(1) It is the duty of a railroad company in the con-

struction of its railway and in keeping it in proper condition for the safe transportation of passengers to exercise the highest degree of care and skill practicable under the circumstances and then known to persons skilled in such work, but when such care and skill have been exercised its duty to the public has been sufficiently discharged in this respect.

"(2) If you find from the evidence, under these instructions, that the plaintiff has sustained injuries of the kind and character above set forth, and such injuries were caused by reason of the road-bed being in an unsafe condition on account of the causes so alleged, . . . which might have been remedied or guarded against and averted by the exercise of defendant's employees of the highest degree of care and skill then practicable and then known to the servants having charge of such work, . . . the plaintiff would in such case be entitled to recover.

"But if the cause of the accident was one which the highest degree of practicable skill, care and caution consistent with operating the road could not have provided against, then you should find for the defendant."

"(6) It was the duty of the defendant railway company to use and employ the latest and best known methods of keeping its track in good condition, including ties of the best quality of material, and if the defendant made use of ties of inferior quality at the place of the accident in question, and if by reason of the use of the quality of ties used the rails spread and caused the injury complained of by the plaintiff, and if human sagacity would have suggested that by the use of ties of first-class quality such injury could have been avoided and such injury would in fact thus have been avoided, then in that event you should find for the plaintiff, provided you find he suffered injuries as a result of said accident which he could not by an exercise of due care on his part have avoided.

"(7) The jury are instructed in this case that it is incumbent upon the plaintiff to show that he was a regular passenger on the train in question and in his proper place in the car; that the car was thrown from the track and that he was injured, and the extent of his injury, if any, and that the accident might have occurred in the way and from one or more of the causes alleged. A showing of these facts is sufficient showing by the plaintiff to establish *prima facie* the want of that

Railway Co. v. Brandon.

high degree of care and diligence which the law imposes. on railroad companies in the transportation of passengers; it then in such case devolves on the company to show that the accident could not have been prevented by the exercise of the utmost human sagacity and foresight."

It is also urged that the findings were not sustained by the evidence, and that the amount of the damages was excessive. The findings were as follow :

"(1)   Ques.   Was the defendant railway company careless, negligent or inefficient in the operation of its railroad at the place where the derailment of the train and the alleged injury of the plaintiff took place?   Ans. They were.

"(2)   Q.   If you answer question No. 1 in the affirmative, then state in what particular the defendant was careless, negligent or inefficient.   A.   By not using the proper kind of material for ties.

"(3)   Q.   Did the defendant railway company, at the place of derailment, allow the ties of the road-bed to become loose?   A.   No."

"(5)   Q.   Were the spikes at the place of derailment and immediately prior thereto loose?   A.   They were."

"(7)   Q.   Did the defendant railway company use the best methods of keeping its track and road-bed in a proper and safe condition?   A.   No.

"(8)   Q.   If you answer the foregoing question in the negative, then state in what particular it failed to use the best methods of keeping its track and road-bed in a proper and safe condition.   A.   By using soft-wood ties which were not sufficient to hold the spikes."

"(10)   Q.   If you find for the plaintiff, what amount if any do you allow him for the alleged injury to his hip?   A.   One hundred dollars."

"(12)   Q.   If you find for the plaintiff, what amount if any do you allow him for the alleged injury to his spine?   A.   Two hundred dollars.

"(13)   Q.   At what rate of speed was the train upon which the plaintiff was riding running at the time of the derailment?   A.   Between thirty and forty miles per hour.

"(14)   Q.   At the time of derailment of the train upon which plaintiff was riding was such train running

at the usual, ordinary and schedule speed of such train? A. It was.

"(15) Q. Was the speed of the train excessive at the time of the derailment? A. No.

"(16) Q. Was the road-bed at the place where the derailment occurred in bad condition, and unsafe for travel at the time of the derailment? A. No."

"(18) Q. Were the ties frozen solidly in the road-bed at the time and place of the derailment? A. Yes."

"(20) Q. How long before the time of the derailment did the passenger-train No. 16 pass safely over the place of derailment? A. Forty minutes.

"(21) Q. If you find for the plaintiff, how much, if any, do you allow him for the alleged injury to his chest? A. One hundred and fifty dollars.

"(22) Q. Did the track-walker pass over and examine the road-bed and track at the place of the derailment shortly before the derailment? A. Yes.

"(23) Q. If you answer the last question in the affirmative, then state how long before the derailment he passed over the track at the place of the derailment. A. From thirty to forty-five minutes."

The following memorandum was indorsed upon the findings:

| | |
|---|---|
| "Doctor bill. . . . . . . . . . . . . . . . . . . . . . . . | $48 |
| Sickness. . . . . . . . . . . . . . . . . . . . . . . . . | 500 |
| Physical injuries. . . . . . . . . . . . . . . . . . : | 1,000 |
| | $1,548" |

The negligence claimed is thus stated in the petition:

"That shortly west of the station of Lebanon, on the said defendant's railroad, and without fault or negligence on the part of plaintiff, and by reason of the careless, negligent and inefficient management of the said defendant railway company in the operation of the said railroad, and by reason of the road-bed being in bad condition and unsafe for travel, viz., defendant allowed the ties to become loose, the spikes therein to become loose, and defendant failed to keep and maintain it in the proper condition, and by reason of the spikes becoming loose and the ties loose and the rails not held firmly in place where said wreck occurred and defendant's failure to use and employ the latest and best known methods of keeping its track and road-bed and railroad in proper and safe condition for the safety of its passen-

Railway Co. v. Brandon.

gers   .   .   .   the said train was wrecked and left the track while running at such high rate of speed, and violently threw this plaintiff from his seat and injured plaintiff severely, causing this plaintiff great bodily and physical pain and suffering and resulting in lasting and permanent injury to plaintiff."

*M. A. Low,* and *Paul E. Walker,* for plaintiff in error.

*E. P. Hotchkiss, Lee Monroe,* and *George A. Kline,* for defendant in error.

The opinion of the court was delivered by

BENSON, J.: There was no error in refusing to direct a verdict for the defendant. The plaintiff having shown the derailment of the train in which he was riding as a passenger, and injuries resulting to himself therefrom, made a *prima facie* case, and the burden was thrown upon the defendant to show that the injuries did not result from a want of care on its part. (*S. K. Rly. Co. v. Walsh,* 45 Kan. 653, 26 Pac. 45; *A. T. & S. F. Rld. Co. v. Elder,* 57 Kan. 312, 46 Pac. 310; *Railroad Co. v. Burrows,* 62 Kan. 89, 61 Pac. 439.) Whether this *prima facie* case was overcome by the evidence was a question for the jury and not for the court. (*Railway Co. v. Geiser,* 68 Kan. 281, 75 Pac. 68.)

It is argued that the jury did not find the negligence as alleged in the petition, and that in the absence of such finding the judgment should have been for the defendant. It was alleged, in substance, that the company allowed the spikes to become loose in the ties and for that reason the rails were not held firmly in place, and failed to employ the best known methods of keeping its track in safe condition, thus causing the train to leave the track. The jury found that the company was negligent in not using the proper material for ties, that the spikes were loose, and that by using soft-wood ties, not sufficient to hold the spikes, it failed to use the best methods of keeping its track and road-bed in a safe and proper condition. The findings sustained the allega-

tions of negligence charged in the petition. It is argued that, as there was no averment of negligence in using soft-wood ties, the finding in reference thereto was not within the issue. It was not the use of soft-wood ties that the jury found to be unsafe, but the use of soft-wood ties "which were not sufficient to hold the spikes," and it was found that the spikes so driven into ties not sufficient to hold them were loose.

It is also urged that these findings are not sustained by the evidence. Something caused the displacement of the rail. The track was straight, the train was moving at an ordinary rate of speed, and the wheels were shown to be in good condition. Only six days before the track had spread at the same place. The displaced rails had been restored to their proper position, and spiked down again upon the same ties. After this derailment the rails were found again forced out, and the spikes bent or forced down into the wood, thus permitting the rail to be pushed out and the track to spread. The jury found, in effect, that the rails were displaced because the spikes were loose, and that they were loose because the ties were insufficient to hold them. The fact that the same thing occurred shortly before at the same place was a circumstance to be considered with the other facts proved (3 Thomp. Com. Law of Neg. § 2814) ; the deductions and inferences therefrom were for the jury. Their findings are not shown to be unreasonable or inconsistent.

The defendant presented two questions which the court refused to submit to the jury. One was: "State in what particular the spikes were loose." That the spikes were loose is itself a particular, i. e., an item or detail of the condition of the track. Not only was this defect stated, but also its cause. What more minute detail was desired was not suggested in the question. The other question asked the jury to state the condition of the track when the track-walker passed over it shortly before the derailment occurred. While the con-

Railway Co. v. Brandon.

dition of the track forty minutes before the occurrence complained of was some evidence tending to show its condition at that time, the material fact was its condition at the time of the derailment. The court did not err in rejecting these questions. (*Foster v. Turner,* 31 Kan. 58, 1 Pac. 145; *Mo. Pac. Rly. Co. v. Reynolds,* 31 Kan. 132, 1 Pac. 150; *Railroad Co. v. Aderhold,* 58 Kan. 293, 49 Pac. 83; *City of Weir v. Herbert,* 6 Kan. App. 596, 51 Pac. 582.)

The defendant complains that too great a burden was imposed upon it by that clause of the instructions requiring the company to show that the accident could not have been prevented by the exercise of the utmost human sagacity and foresight. The degree of care required of carriers of passengers with respect to cars and equipment applies to the road-bed and tracks (3 Thomp. Com. Law of Neg. §§ 2796, 2797; 4 Ell. Railroads, § 1586), and the rule so stated in the instructions was declared to be the established law of this state in *Union Pacific R. Co. v. Hand,* 7 Kan. 380, and has since been affirmed in *Topeka City Rly. Co. v. Higgs,* 38 Kan. 375, 16 Pac. 667, 5 Am. St. Rep. 754, *Mo. Pac. Rly. Co. v. Johnson,* 55 Kan. 344, 40 Pac. 641, *S. K. Rly. Co. v. Walsh,* 45 Kan. 653, 26 Pac. 45, *A. T. & S. F. Rld. Co. v. Elder,* 57 Kan. 312, 46 Pac. 310, and in *Railroad Co. v. Burrows,* 62 Kan. 89, 61 Pac. 439.

Complaint is also made of the sixth instruction, wherein it was stated to be the duty of the company "to use and employ the latest and best known methods of keeping its track in good condition, including ties of the best quality of material," and, "if human sagacity would have suggested that by the use of ties of first-class quality such injury could have been avoided," then the plaintiff might recover, if certain other facts were proved. It is said that the language quoted increased the duty of the company in an unwarranted manner; that to use the best quality of material that human sagacity would suggest would require a prohibitive expenditure. But the very fact that any particular ma-

terial is so difficult to obtain and so expensive as to prohibit its use would also preclude its suggestion to the mind as being required for such purpose. In *Indianapolis, etc. R. R. Co. v. Horst*, 93 U. S. 291, 23 L. Ed. 898, where the instruction held the company to the exercise of "the highest possible degree of care and diligence" (p. 295), it was said by Mr. Justice Swayne that these terms "do not mean all the care and diligence the human mind can conceive of, nor such as will render the transportation free from any possible peril, nor such as would drive the carrier from his business." (Page 296.) The court approved the charge, saying: "The language used cannot mislead. It well expresses the rigorous requirement of the law, and ought not to be departed from." (Page 297.) The courts have used varying terms in defining the duty of carriers of passengers in this respect, but there is a general consensus of the meaning which may be drawn by the average mind from the expressions used. In other instructions given the court stated that it was the duty of the company "in the construction of its railway and in keeping it in proper condition for the safe transportation of passengers to exercise the highest degree of care and skill practicable under the circumstances, . . . but when such care and skill have been exercised its duty to the public has been sufficiently discharged."

Again, the court said:

"But if the cause of the accident was one which the highest degree of practicable skill, care and caution consistent with operating the road could not have provided against, then you should find for the defendant."

This expression, "practicable skill, care and caution," was repeated in another place in defining the duty of the company. The fifth instruction, which is not copied because of its length, expresses the views of the defendant in this respect, since it follows very closely its request, and clearly indicates that no merely fanciful, unreasonable or impracticable burden was intended to be put upon the company by the language objected to. With-

out approving all the expressions referred to, we must hold that they were not misleading, and that when the instructions are properly considered as a whole, as they naturally must have been by the jury, they were not erroneous. (*Hays v. Farwell*, 53 Kan. 78, 35 Pac. 794; *The State v. Atterberry*, 59 Kan. 237, 52 Pac. 451.)

It is also urged that the amount of the recovery was excessive, and the district court so considered it, for a *remittitur* of $200 was required. The court may do this unless it appears that the excessive amount was allowed through passion or prejudice. (*U. P. Rly. Co. v. Mitchell*, 56 Kan. 324, 43 Pac. 244; *Haldeman v. Johnson*, 8 Kan. App. 473, 54 Pac. 507.)

The jury, in answer to special questions, found the amount of damages for certain particular injuries, but were not asked to specify further, and returned a gross sum. It is claimed that the items appear in the memorandum that was found indorsed upon the findings, and that this shows the amount of the verdict to be excessive. We are not aware of any rule of practice by which we can treat this unsigned memorandum, not appearing to be in response to any question submitted, as a part of the verdict, in the absence of any action requested or taken thereon in the district court when the findings were returned.

The judgment is affirmed.