## NELLIE FREEMAN *vs.* TRAVELERS' INSURANCE COMPANY.

Worcester.    October 4, 1886. — June 29, 1887.

In an action upon a policy of insurance against bodily injuries "effected through external, violent, and accidental means, within the meaning of this contract and the conditions hereunto annexed," one of which is that "the party insured is required to use all due diligence for personal safety and protection," the burden of proof is on the defendant to show that the assured did not use such due diligence.

In an action upon a policy of insurance against bodily injuries "effected through external, violent, and accidental means, within the meaning of this contract and the conditions hereunto annexed," one of which is that "the party insured is required to use all due diligence for personal safety and protection," if the judge refuses to rule that there is not sufficient evidence to warrant the jury in finding that the assured used due diligence, and erroneously rules that the burden of proof is on the plaintiff to show the use of such diligence, the defendant is not harmed, and has no ground of exception.

In an action upon a policy of insurance against bodily injuries to M. "effected through external, violent, and accidental means," containing the condition that the assured should "use all due diligence for personal safety and protection," it appeared that M., who was in the employ of a railroad corporation, was sent to clear snow from the rails at a crossing; and that he was killed by a freight train of the corporation in the daytime.  The engineer of the train testified, for the defendant, that in approaching the crossing, after rounding a sharp curve, he saw M. lying on the snow between the rails with his face to the ground; that he sounded the warning whistle and reversed the engine; that he could see the crossing for perhaps thirty rods; that there was difficulty in stopping the train in thirty rods; and that he opened the sand-box.  The conductor of the train, who had previously been a brakeman, and who was a witness for the plaintiff, was allowed to testify, in rebuttal, that the train ought to have been stopped quicker than it was, and in from three to five minutes; that he could not tell how far it would go after all the appliances were used for stopping the train;

an : that his idea was forty or fifty rods. On cross-examination, he testified that, when the whistle sounded, he was in the caboose, looking out at the rear end of the train. *Held*, that the defendant had no ground of exception to the admission of the evidence of the conductor.

CONTRACT upon a policy of insurance, issued by the defendant corporation, against bodily injuries to ·J. J. Murray, for the term of one year from September 14, 1883, and payable to the plaintiff. The material provisions of the policy appear in the opinion. Trial in the Superior Court, before *Bacon*, J., who allowed a bill of exceptions, in substance as follows :

Murray was in the employ of the Boston, Barre, and Gardner Railroad Company, and was killed by a freight train on the road of that corporation on December 26, 1883.

Edward Doody, a witness for the plaintiff, testified that he was the conductor of the freight train which caused Murray's death; that he was in the saloon car at the time of the accident, which was in the forenoon ; that the first he knew of it was the picking up of Murray, just below a certain crossing; that while in the car he heard a whistle for the crossing, and, a few minutes later, he heard a whistle for brakes ; that he helped the brakemen; that the first thing he saw, after the train was stopped, was Murray, who was behind the train, lying beside the rail on the outside of the track ; that he was the first man who approached Murray, and he spoke to him, and Murray replied ; that the witness, the engineer, and the fireman of the train picked Murray up and put him into the saloon car ; that his legs appeared to be broken, and his head was bloody; that the train then went on, and Murray died in a few minutes ; and that Murray was conscious from the time the witness went to him until he died. On cross-examination, the witness testified that he sent a brakeman back to notify Murray's foreman of the accident ; and that, when the brakeman was so sent, Murray said that he did not want the witness to tell the foreman ; that he did not want the foreman to know anything about it.

It had previously been proved that Murray went out that morning from Worcester on a passenger train, and reported at a certain station to the section foreman, who sent him off with his pick and shovel to· clear the snow from the rails at crossings, the first crossing being the crossing where he was killed :

that there were ten or twelve inches of old snow on the ground; and that there had been a fall of three inches of new light snow the preceding night.

A. W. Mitchell, a witness for the defendant, testified that he was the engineer of the train which killed Murray; that the condition of the track was slippery, caused by a light snow; that there was deep snow on each side of the track; that as the train approached the crossing in question, it being a down grade, he sounded the whistle at the whistling post nearest to the crossing, and, rounding a sharp curve, he saw what he thought to be a coat on the snow, but, on getting nearer, he saw a man lying on his face, his feet towards the engine and his limbs covered with light snow; that the coat did not seem to have much of any snow on it; that he whistled for brakes, and sounded the whistle for the man to get off; that the man did not move, and he reversed the engine; that the man did not start, and the fireman applied the tender-brake; that as the train struck him, the clothing caught on the scraper and threw him one side; that one limb might have gone under the front wheel; that the clothing held and kept him from being thrown under the train and mangled; that he was drawn quite a distance, and then thrown out to one side; that, before the man was struck, his arms were lying out in front of him, and his face was down on the snow; that he was lying lengthways between the rails, with his head towards the crossing; that a pick or shovel was standing up in the snow on the right of the track, near him; and that he heard the man say, " Don't tell Mike," meaning his foreman. On cross-examination, the witness testified, that, after rounding the curve, he could see the crossing for perhaps thirty rods; that he was about twenty rods from the crossing when he saw the coat; that, when he first discovered the man, he whistled for brakes and reversed his engine, and then gave a succession of short whistles for the man to get out of the way; that at the time of the accident he had been an engineer for two and one third years, and had previously been a fireman for three or four years; that there was difficulty in stopping the train in thirty rods; and that he opened the sand-box.

The plaintiff, for the purpose of controlling the testimony of Mitchell by showing him to have been reckless and to have run

over the deceased unnecessarily, recalled Doody, and, against the defendant's objection to both the competency of the evidence and the qualification of Doody to give his opinion, he was allowed to testify that he had been a brakeman before he was conductor; that the train ought to have been stopped quicker than it was, and in from three to five minutes; that he could not tell how far it would go after all the appliances were used for stopping the train; and that his idea was forty or fifty rods.

On cross-examination, the witness testified that, when the whistle sounded, he was in the caboose, looking out at the rear end of the train.

The plaintiff also put in evidence tending to show that the railroad was nearly straight for a long distance from said crossing toward the north; that the planking on the crossing could be seen by a man standing on the track at a distance of about ninety rods from the crossing; and that, if a man was elevated as high as the engineer would be in his cab, he could see said planking for a considerable distance farther.

At the conclusion of the evidence, the defendant asked the judge to instruct the jury " that there is no sufficient evidence in this case to warrant the jury in finding that the deceased was in the exercise of due diligence for personal safety and protection at the time of the injury, and that therefore the plaintiff cannot recover." This ruling was refused, and that issue was submitted to the jury, the judge ruling that such due diligence or due care must be proved by the plaintiff affirmatively.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*W. S. B. Hopkins*, for the defendant.

*F. P. Goulding*, for the plaintiff.

FIELD, J. The policy insures J. J. Murray against bodily injuries " effected through external, violent, and accidental means, within the intent and meaning of this contract and the conditions hereunto annexed," &c. After the principal clause of the policy, five provisos and eight conditions follow. The second proviso is, " Provided always, that this policy is issued and accepted subject to all the provisions herein contained or referred to," &c. The third proviso is, " That this insurance shall not extend to any bodily injury . . . . when the death or

injury may have happened in consequence of . . . . voluntary exposure to unnecessary danger, hazard, or perilous adventure," &c. The conditions are introduced by the following clause: " Claims under this policy are payable only at the company's office in Hartford, and this policy is subject also to the following conditions." The first condition is, " The party insured is required to use all due diligence for personal safety and protection, and to notify the agent writing this policy, immediately and in writing, of any change from the occupation, profession, or employment under which this insurance is granted," &c. ; and, by the last condition, " The provisions and conditions aforesaid, and a strict compliance therewith during the continuance of this policy, are conditions precedent to the making of this contract." This last condition cannot take effect universally, because many of the provisos and conditions relate to matters which must happen, if at all, after the making of the contract.

Clearly there was evidence for the jury that Murray received bodily injury through external, violent, and accidental means; and that he did not voluntarily expose himself to unnecessary danger. He was rightfully upon the railroad track under his employment. The questions involved in the exceptions are, whether the burden of proof was on the plaintiff to show that Murray used "all due diligence for personal safety and protection," and whether there was sufficient evidence for the jury to warrant them in finding this as a fact. A majority of the court are of opinion that the burden was on the defendant to show that Murray had not used all due diligence for his personal safety and protection. So far as this first condition is concerned, the policy means that the company insures Murray against bodily injuries effected through external, violent, and accidental means, provided, however, and subject to the condition, that the amount insured shall not be payable unless Murray uses " all due diligence for personal safety and protection." The defendant's liability is to be determined by the contract; independently of the special provisions of the contract, contributory negligence on the part of Murray would not be a defence ; and, by the use of the word " accidental," injuries to which the negligence of Murray contributed are not excluded from the protection of the policy. *Schneider* v. *Provident Ins. Co.* 24 Wis.

28. *Trew* v. *Railway Passengers' Assur. Co.* 6 H. & N. 839. *Providence Ins. Co.* v. *Martin*, 32 Md. 310. *Stone* v. *United States Casualty Co.* 5 Vroom, 371.

In *Sohier* v. *Norwich Ins. Co.* 11 Allen, 336, after the description in the policy of the property insured, this clause was inserted: " This policy not to cover any loss or damage by fire which may originate in the theatre proper." It was held that the burden was on the plaintiff to show a loss not originating in the theatre proper. The court said : " If that clause can be regarded as a proviso, that is, a stipulation added to the principal contract, to avoid the defendants' promise by way of defeasance or excuse, then it is for the defendants to plead it in defence, and support it by evidence. But if, on the other hand, it is an exception, so that the promise is only to perform what remains after the part excepted is taken away, then the plaintiff must negative the exception to establish a cause of action. It is not always easy to determine to which class, whether of provisos or exceptions, a particular stipulation belongs; and this one is certainly very near the line." The court held it to be an exception, saying that " the provisos are set forth together in a different part of the instrument."

In *Kingsley* v. *New England Ins. Co.* 8 Cush. 393, the policy recited that Kingsley had paid the premium, &c., for insuring his paper-mill, " on condition that the applicant take all risk from cotton waste," in consideration whereof the company insured the property in the sum of two thousand dollars. The court held that the burden was not on the plaintiff to show that the loss occurred in some other way than from cotton waste; that the clause was not an exception, but a proviso; and that the defendant must set it up in defence, and support it by evidence.

The rule of pleading, in declaring upon a contract which contains an exception, or a proviso, or a condition, is stated in *Commonwealth* v. *Hart*, 11 Cush. 130, 134, as follows: " If such instrument contain in it, first, a general clause, and afterwards a separate and distinct clause which has the effect of taking out of the general clause something that would otherwise be included in it, a party, relying upon the general clause, in pleading, may set out that clause only, without noticing the separate and

distinct clause which operates as an exception; but if the exception itself be incorporated in the general clause, then the party relying on it must, in pleading, state it together with the exception." It is a general rule of the law of evidence, that it is necessary for a party to prove the substantive facts which he is required affirmatively to aver in his pleading.

It is true that the policy in the case at bar only insures against bodily injuries effected by the means described, "within the intent and meaning of this contract, and the conditions hereunto annexed," but this does not change the nature of the conditions. They still take effect as conditions, and the insertion of these words in the principal clause of the contract does not vary the legal effect of the contract. The condition we are considering is essentially an executory stipulation, in the form of a condition, that Murray shall use all due diligence for his personal safety and protection, and it is the breach of this condition by Murray which the defendant sets up as a defence. We are not aware that it has ever been held that the introduction of the words we have quoted, or of other similar words, into the principal clause of a policy of insurance incorporates into this clause the conditions of the policy, within the meaning of the rule of pleading we have stated; and in some of the decisions where it has been held that the defendant must plead, or that the burden of proof was on him to show, that a representation was false, or that a stipulation contained in a condition had not been complied with, the policy contained these or similar words in the principal clause. Every case depends upon the nature of the stipulation or condition, as well as upon the form of it. This condition does not differ in its character from the provision in life-insurance policies, that they shall be void, or that the amount insured shall not be payable, if the assured shall die by his own hand. The burden of proving the breach of such a provision is on the company; and we think that the ruling in the present case upon the burden of proof was erroneous. *Jones Manuf. Co.* v. *Manufacturers' Ins. Co.* 8 Cush. 82. *Daniels* v. *Hudson River Ins. Co.* 12 Cush. 416, 426. *Haskins* v. *Hamilton Ins. Co.* 5 Gray, 432. *Mulry* v. *Mohawk Valley Ins. Co.* 5 Gray, 541. *Orrell* v. *Hampden Ins. Co.* 13 Gray, 431. *Cluff* v. *Mutual Benefit Ins. Co.* 13 Allen, 308; and 99 Mass. 317.

*Hodsdon* v. *Guardian Ins. Co.* 97 Mass. 144.    *Campbell* v. *New England Ins. Co.* 98 Mass. 381.    *Peirce* v. *Cohasset Ins. Co.* 123 Mass. 572.    *Germain* v. *Brooklyn Ins. Co.* 30 Hun, 535. *Redman* v. *Ætna Ins. Co.* 49 Wis. 431.    *Grangers' Ins. Co.* v. *Brown,* 57 Miss. 308.

In an action upon a policy which contains many provisos and conditions, there is a practical wisdom, which courts have recognized, in compelling the insurance company to allege and prove the want of compliance with any particular proviso or condition on which it relies.    *Piedmont Ins. Co.* v. *Ewing,* 92 U. S. 377.

The court refused to rule that there was not sufficient evidence to warrant the jury in finding that Murray used due diligence; and to this the defendant excepted.    It is evident that this refusal, if erroneous, has not harmed the defendant, because the burden of proof was upon it.

We cannot say that the witness Doody had not sufficient experience to justify the court in permitting him to testify as he did.    His evidence had some tendency to show that the defendant's witness, Mitchell, had not testified correctly, and that he had not exercised due care in stopping the train, and it had perhaps some relevancy to the matter in dispute, which was whether Murray was injured through his own fault, or through that of the managers of the train.    *Exceptions overruled.*