CRONKHITE, Appellant, vs. THE TRAVELERS INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Respondent.

*October 22 — November 5, 1889.*

ACCIDENT INSURANCE. *(1) Presumption that injuries were accidental. (2) Stipulated exceptions: Conditions precedent.*

1. In an action upon an accident insurance policy, the presumption is that bruises and wounds upon the person of the insured, and which caused his death, were the result of accident.

Cronkhite vs. The Travelers Ins. Co. of Hartford, Connecticut.

2. Stipulations not contained in the body of an accident policy, but indorsed thereon, and providing that the insurance shall not cover injuries resulting from certain specified causes, are not in the nature of conditions precedent, but if anything therein will defeat the action it is a matter of defense.

APPEAL from the Circuit Court for *Portage* County.

This action was brought upon an accident policy of insurance, dated July 29, 1887, issued by the defendant company to Carl E. Cronkhite, late husband of the plaintiff, insuring him for twelve months, under certain restrictions not material here, against loss of time "resulting from bodily injuries effected during the term of his insurance through external, violent, and accidental means." The policy further provides that, in case death should result from any such injuries within ninety days, the company will pay to the wife of the insured, the plaintiff, if then living, $2,000. The complaint sets out the whole policy, and alleges that the insured received personal injuries, caused by external, violent, and accidental means, between the 20th and 30th days of September, 1887, which resulted in his death on October 7th of the same year. It is also alleged that the insured was injured by being pinched, bruised, and jammed by cars while engaged in his regular employment, and acting in the capacity allowed by the terms of the policy. Due service of notice and proof of death, as required by the policy, is also alleged. Except as to the allegations of the corporate character of defendant, the issuing of the policy, and the death of the insured, the answer is a general denial.

Under the heading, "Agreements and conditions under which this policy is issued and accepted," there is indorsed upon the policy, among other stipulations, the following: "(3) This insurance does not cover disappearances; nor suicide, sane or insane; nor injuries of which there are no visible marks upon the body; nor accident, nor death, nor

of loss of limb or of sight, nor disability resulting, wholly or partly, directly or indirectly, from any of the following causes, or while so engaged or afflicted: disease or bodily infirmity; hernia; fits; vertigo or sleep walking; medical or surgical treatment (amputation necessitated solely by injuries, and made within ninety days of the occurrence of accident, excepted); intoxication or narcotics; taking poison, or contact with poisonous substances; inhaling gas; sunstroke or freezing; dueling or fighting; war or riot; intentional injuries (inflicted by the insured or by any other person); voluntary over-exertion; wrestling; lifting; racing; gymnastics; violating law; voluntary exposure to unnecessary danger."

The plaintiff testified on the trial that she was the widow of the insured and resided at Stevens Point; that her husband was a conductor on the Wisconsin Central Railroad; that his regular run was from Stevens Point to Ashland and return; that he left home to make his regular trip September 17, and returned September 19, 1887, in the evening. She was then asked by her counsel what was his physical condition, so far as she could judge from his appearance. An objection to the question was interposed, and then followed a conversation between counsel for both parties and the court, during which counsel for plaintiff offered to prove by her and by physicians who attended the deceased that when he returned home on the 19th there were marks of extreme violence upon his back, apparently inflicted quite recently,— within a day or two,— and that his injuries, in the opinion of the physicians, were sufficient to produce, and did produce, death. This offer was accompanied by the statement and admission of counsel that the plaintiff had no proof to offer as to how the deceased was injured, but rested her case on the presumption, which he claimed would arise from such testimony, that the violence, injury, and death were the result of accident. The court

held that no such presumption would arise from the testimony thus offered, but that before the plaintiff could recover she must go further, and show affirmatively that the injuries were the result of accident, by showing the manner in which they were inflicted, or the cause of them. Hence the court held that the offered testimony alone did not tend to prove that the death of the insured was caused by accident, and thereupon rejected the testimony, and nonsuited the plaintiff. The plaintiff appeals from the judgment of nonsuit.

For the appellant there was a brief by *Synon & Frost*, attorneys, and *Neal Brown*, of counsel, and oral argument by *D. E. Frost*.

For the respondent there was a brief by *Cate, Jones & Sanborn*, and oral argument by *D. Lloyd Jones*.

Lyon, J. We think the court took an erroneous view of the law. Unless the injuries which are alleged to have caused the death of the insured were intentionally self-inflicted, or intentionally inflicted by some other person, or were received in dueling or fighting (in which case they would be intentional), the legal presumption is that they were accidental. No presumption can be indulged that the law has been violated, as it would have been were the injuries intentionally inflicted by another. On the contrary the presumption is that they were not. Hence, had the plaintiff proved only that the insured, at a certain time, had upon his person bruises and wounds, evidencing that he had been recently injured by external violence, and, further, that such injuries caused his death, she would have made out a *prima facie* case of death resulting from bodily injuries, "through external, violent, and accidental means." Were it claimed that the injuries were self-inflicted or were caused by the negligence of the insured, until such self-infliction or negligence should be affirmatively proved the

same presumption of accident would prevail. *Mallory v. Travelers' Ins. Co.* 47 N. Y. 52; *Travelers' Ins. Co. v. McConkey*, 127 U. S. 661; *Freeman v. Travelers' Ins. Co.* 144 Mass. 572; *Peck v. Equitable Acc. Asso.* 59 Hun, 255, 5 N. Y. Supp. 215. In the opinions in the above cases will be found citations of numerous other cases holding the same doctrine.

Neither is there any presumption that the injuries which it is claimed caused the death of the insured resulted from any of the causes not covered by the policy, as specified in paragraph 3 of "agreements and conditions," indorsed upon it. The stipulations therein are not conditions precedent, and are not inserted in the body of the policy. They are separate provisos, qualifying the general words in the policy. It was held in *Redman v. Ætna Ins. Co.* 49 Wis. 431, that in such case, if anything contained in the provisos will defeat the action, it is matter of defense. See, also, *May v. Buckeye Mut. Ins. Co.* 25 Wis. 291. True, these cases arose upon policies insuring against loss or damage by fire; but the principle is equally applicable to a life or accident policy.

Should the plaintiff, on another trial, make the proof which she offered to make, and show due notice and proof to the defendant of the injuries and death of the insured, as required by one of the conditions indorsed upon the policy, she will be entitled to judgment, unless the company prove that the injuries resulted from some or one of the causes specified in said paragraph 3.

The foregoing views are fully sustained by the supreme court of Massachusetts in *Coburn v. Travelers' Ins. Co.* 145 Mass. 226, which was an action against the present defendant on a policy in all essential particulars like that here in suit.

For the reasons above suggested we think the nonsuit was erroneously ordered.

*By the Court.*— Judgment reversed, and the cause remanded for a new trial.