## ST. LOUIS & S. F. R. Co. v. POSTEN.

### No. 2091. Opinion Filed May 14, 1912.

#### (124 Pac. 2.)

1. **TRIAL—Directing Verdict.** The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence which has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict, should the jury find in accordance therewith. Where the evidence is conflicting, and the court is moved to direct a verdict, all facts and inferences in conflict with the evidence against which the action is to be taken must be eliminated entirely from consideration and totally disregarded, leaving solely the evidence for consideration which is favorable to the party against whom such action is leveled; for it is only when the evidence is such that all reasonable men, in the exercise of an unprejudiced judgment, must reach the same conclusion that a court may lawfully withdraw a question of fact from the jury.

2. **SAME—Issues—Instructions.** Where the derailment of a train is averred to be due to the negligence of the railway company in certain specified particulars, and evidence thereof is introduced sufficient to support a verdict, and the railway company offers evidence of an independent fact which, it claims, caused the accident, and which, if true, would relieve it of responsibility, it is the duty of a trial court to present both theories to the jury, unless the latter is established so effectively that all unprejudiced, reasonable men would agree thereon.

3. **CARRIERS — Injuries to Passengers—Degree of Care Required.** Where a prima facie case is made out to recover damages for injuries sustained through the derailment of a train upon which a passenger was riding, it devolves upon the railroad company, in order to be relieved of liability, to show that the accident could not have been avoided by the exercise of the utmost human pru-

dence and foresight; and instructions placing upon it this burden are without error.

(Syllabus by the Court.)

*Error from District Court, Creek County;*
*W. L. Barnum, Judge.*

Action by Anna Posten against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*W. F. Evans, R. A. Kleinschmidt,* and *J. H. Grant,* for plaintiff in error.

*E. C. Warfel* and *Tibbetts & Green,* for defendant in error.

DUNN, J. This case presents error from the district court of Creek county. Under the pleadings and the evidence, it is made to appear that the defendant, on March 14, 1908, owned and operated a line of railway between Oklahoma City and Sapulpa, Okla.; that W. H. Posten, who was the husband of plaintiff, was a United States mail clerk, and, as such, was engaged in the performance of his duties on one of defendant's passenger trains. The train on which he was riding was derailed about 210 feet west of a place where the track runs over a wooden trestle spanning a gorge or a creek. The engine ran onto the bridge and overturned, and as it plunged into the creek the combination mail and baggage car, and a part of the combination negro coach and smoker, followed it. Part of the bridge was torn down and demolished. The chair car and Pullman were left upon the right of way. Plaintiff's husband and the fireman of the train were killed and the engineer seriously injured. The negligence charged by plaintiff, and to which her evidence was largely directed, was as follows:

"And plaintiff particularly alleges that said wreck was caused by the negligence of said defendant and its servants in failing to keep and maintain the roadbed on its said line of railroad in proper repair, in using light and insufficient ties in the construction of said railroad, and in failing to remove old and rotten ties, and replace them with new ones; in failing to keep the joints at the ends of said railroad irons or rails in proper con-

dition, and in failing to equip its train with proper air brakes, and in failing to apply its brakes immediately upon the derailment of the train, and in failing to construct its said bridge of proper and durable material in a proper and safe manner."

The answer of defendant was a general denial. On the issues thus made, the cause was presented to a jury, which returned a verdict in plaintiff's favor in the sum of $5,000. To reverse the judgment rendered thereon, after denial of a motion for new trial, the cause has been by defendant lodged in this court.

The theory upon which the cause was tried by plaintiff, and upon which it was probably decided by the jury, is that for some cause, probably the spreading of the rails, or because of a low joint, or, perhaps, because of the falling of a nut on the rail from some part of the machinery, one of the cars in the train back of the engine, and, perhaps, back of the mail car, became derailed as the train rounded the curve on a downgrade approaching the bridge or trestle; that the derailment of this car brought such pressure upon the cars and engine in front, just as the engine was entering upon the bridge, that the bridge gave way, and the engine and cars near to it were thrown into the gorge below. The train was running east, and the theory of the defendant is that some unknown person placed a large iron nut on the north rail of the track, about 210 feet west of the bridge, and that when the front wheel of the engine reached the nut it mounted it, and the flange of the wheel, rising above the edge of the rail, ran onto the ball of the rail and along the top of same for a distance of from twelve to twenty feet, and then dropped off on the ties, ran along these, gradually diverging to the north, for a distance of about 70 feet, when the trucks turned, and the ties were then displaced from that point until the engine was overturned and precipitated into the gorge below. In support of this theory, it was shown by the evidence that a large iron nut was picked up just after the accident within a few inches of the point where, it is contended, the trucks of the engine started on the ball of the north rail, which, it is claimed, rendered it manifest that the accident was due to this cause,

and not the one assigned by plaintiff. There was offered in evidence a large-sized iron nut, flattened as if struck by a moving train or other tremendous force. Upon the end of a rail, on the near side of a joint, was an indentation into which this nut fitted, and it is the contention of counsel for defendant that these physical facts, being undisputed, point absolutely and unerringly to the identical cause of the derailment; and hence the condition of the cross-ties, the roadbed, the bridge, the speed of the train, the delay in applying the brakes, and all other alleged items of negligence relied upon by the plaintiff, become immaterial, as the physical facts mentioned showed conclusively that the derailment of the train was an unavoidable accident, produced by the act of a stranger, over which the defendant had no control; and that the court erred in refusing to instruct the jury to return a verdict in its favor.

Counsel for defendant concede that the burden was upon it to refute the presumption of negligence which arose by proof of the deceased being a passenger upon the train, its derailment, and the damages resulting from his death. On the trial of the cause, plaintiff did not rely upon this presumption, but, in the first instance, offered evidence to establish the details of the negligence of which she averred the defendant was guilty, and on its part the defendant offered evidence to controvert the facts sought to be established, and to establish its theory in reference to the nut.

If the only evidence in the case were that of plaintiff and that of defendant bearing directly upon the issue tendered by plaintiff's petition, there would be virtually no ground upon which to predicate a dissent from the verdict of the jury; for on these points there was simply a disputed question of fact, which the verdict settled finally. The issue raised here arises from the theory presented by the defendant of an independent cause of the accident, which, for the most part, it may be said, as far as it goes, stands virtually uncontroverted. Defendant's position being in the nature of a demurrer, that, admitting the defects of which plaintiff complains, still they were not the cause

of this accident, but that it was occasioned by the overt act of a stranger, for the result of which it is not responsible.

If the physical facts as established by the defendant preclude the acceptance by the court and jury of any other theory for this accident, then a verdict found against the same must necessarily be without essential support in the evidence. But if the theory tendered by the defendant is not so established as to render improper the consideration by the jury of the elements of negligence relied upon by plaintiff, and on the consideration thereof, under proper instructions, the jury finds a verdict in accord therewith, and the evidence essential to its support exists, then, notwithstanding the fact that the issue presented by the defendant might appeal strongly to this court, the verdict of the jury upon the issues must be accepted as final. So that in this situation the rules announced in *Harris et al. v. Missouri, K. & T. Ry. Co.,* 24 Okla. 341, 103 Pac. 758, 24 L. R. A. (N. S.) 858, apply; and, in order for us to sustain defendant's contention, we must find that the evidence offered in support of it is such that all reasonable men, in the exercise of an unprejudiced judgment, must reach the same conclusion, to justify us in reversing the action of the court in denying a directed verdict. *Chicago & N. W. Ry. Co. v. De Clow,* 124 Fed. 142, 61 C. C. A. 34. The rule being that "when the evidence which is offered by a plaintiff to make out his cause of action creates a presumption of negligence the case should be submitted to the jury, unless the rebutting evidence is so clear and circumstantial that no reasonable person could doubt its verity." *McCullen v. Chicago & N. W. Ry. Co.,* 101 Fed. 66, 41 C. C. A. 365, 49 L. R. A. 642. With these rules in mind, we will direct our attention to the evidence supporting this theory.

That it is possible, and may, perhaps, to us seem probable, that the derailment was due to the cause assigned by the defendant is no doubt true; but this possibility or probability was presented to the jury for the purpose of enabling it to find for or against as a fact. It can be conceived and believed that the derailment was so occasioned, notwithstanding the improbability

that any one would place such an obstruction upon the rail at a point on the railroad where there was a curve, a downgrade, and a high trestle, thereby making virtually certain the loss and destruction of property and the death and injury of human beings. with no possible advantage to any one. The nut found was on the side of the rail above which rode the fireman, who was killed. To support the theory that it was on the rail at the time this train reached it, the engineer testified that at that time the fireman said something and got off of his seat and approached the exit of the engine cab. The engineer testified that the wheels of the engine trucks were derailed. It is to be noted, however, that no witness testifies affirmatively in support of the defendant's theory; that is, there is no direct evidence, other than the physical marks, above described, to show, first, that the nut was on the track; second, that this train ran over it; and, third, that thereby the derailment was occasioned. There is no testimony or irrefutable fact shown making certain that the nut was on the track when this train reached it, and that the wreck would not have occurred if the nut had not been on the track. These things defendant asks this court to assume from the facts proven against the verdict of the jury. While appellate courts should and do assume as true all reasonable and logical deductions from evidentiary facts to support the verdict of a jury, they are not permitted to assume conclusions against the verdict, because it is presumed that the jury has considered these matters and has made its election between them. It is shown that at the point where the nut was found and the impression on the rail was made there was a low joint; but it is not impossible nor improbable that this could have been occasioned by and was due to some previous train having passed over, and in so doing displaced the nut, and at the same time further depressed this joint, so that when this train reached it the weakened condition of the unrepaired roadbed made possible the derailment in the manner found by the jury, rather than in the manner contended for by the defendant. Also, as against defendant's claim, there was the testimony of a witness, to whom the engineer stated, immedi-

ately upon being taken from the wreck, that there was a derailment behind the tender, and of another witness, who was on the train, who stated that the engine did not leave the track west of the trestle, or the jar would have been felt, and that he did not believe it would be possible that a truck of the engine could have left the rails for even a short distance without his knowledge. Another witness near the road testified that he was watching from the time the train came out of the cut until it got to the bridge, and that it did not appear to slacken speed. There was other testimony proper for the consideration of the jury in reference to the time and place and the circumstances under which the nut was found which, in its mind, might have thrown some discredit upon the complete acceptance of defendant's theory; but the foregoing is sufficient, in our judgment, to show that the facts relied upon by the defendant, if true, were not established in such a way as to preclude the jury from a consideration of plaintiff's evidence. Each side presented its claim to the jury, and, after carefully and fully considering the entire case, we are not able to say that error was committed in the acceptance by the jury of plaintiff's theory and its rejection of the theory of the defendant. The question is purely one of fact, and one upon which it is easily conceivable for honest, unprejudiced men to differ, and "the presumption is that jurors are reasonable men, and that the trial judge is a reasonable man; and when the judge and jury who tried the case concur in the view that the evidence establishes negligence, every presumption is in favor of the soundness of that conclusion. * * * It is not, therefore, any ground for disturbing the verdict of a jury that the court would not have rendered such a verdict. It must appear that all reasonable men would agree that it was not supported by the evidence, and should be annulled." *Gulf, C. & S. F. Ry. Co. v. Ellis,* 54 Fed. 481, 4 C. C. A. 454. This being true, the verdict rendered by the jury is the last word on the subject, and error was not committed by the court in its ruling thereon. See, in this connection, *Petroleum Iron Works Co. v. Wantland,* 28 Okla. 481, 114 Pac. 717.

This leaves for our consideration the alleged errors in instructions given to the jury. Three of them are as follows:

"It is the duty of a railroad company, in the construction of its railway and in keeping it in proper condition for the safe transportation of passengers or those occupying that relation, to exercise the highest degree of care and skill practicable under the circumstances and then known to persons skilled in such work; but when such care and skill have been exercised its duty to the public has been sufficiently discharged in this respect."

"If you find from the evidence under these instructions that W. H. Posten was the husband of the plaintiff herein at the time of his death, and was killed, and such death was caused by reason of the road or roadbed of the defendant being in an unsafe condition on account of one or more of the causes so alleged in plaintiff's petition, which might have been remedied or guarded against and averted by the exercise by defendant's employees of the highest degree of skill then practicable and then known to servants having charge of said work, then and in that event the plaintiff would in such case be entitled to recover. But, if the cause of the accident was one which the highest degree of practicable skill, care, and caution consistent with operating the road could not have been provided against, then you should find for the defendant."

"If you believe from a preponderance of the evidence that the wreck in question was caused by some obstruction on the track, and that such obstruction was deliberately placed there without any fault or negligence on the part of the defendant, its agents or servants, then you will find for the defendant, provided you further find that the derailment of the train could not have been prevented by the exercise of the highest degree of human care and foresight, notwithstanding the obstruction, and in this connection you will take into consideration the evidence as to the lookout maintained by the engineer and fireman, what, if anything, was done to stop the train after its derailment, or the discovery of danger, and the condition of the defendant's track, roadbed, and bridge; but if you believe from the evidence that the wreck could have been avoided by the exercise of the highest degree of care and foresight practicable to the operation of defendant's railroad in these particulars, and under these circumstances, then your verdict should be for the plaintiff."

The general objection to these instructions is that they impose upon defendant the necessity of establishing to the satis-

faction of the jury that, in the construction of its railway and in keeping it in proper condition, it had exercised the highest degree of care and skill then known to persons skilled in such work, and that such limitations as "practicable under the circumstances" was to the average juror "merely sounding brass and tinkling cymbals," and justified them in returning a verdict for plaintiff, if they found that the defendant had not used the highest degree of care and skill "then known to persons skilled in such work," and that it imposed upon the defendant and its employees the duty of exercising an unreasonable degree of skill in the construction and maintenance of its tracks and roadbed, and authorized and directed a recovery against the defendant in the event that any way or method might suggest itself to the minds of the jurors, whereby the tracks and roadbed, if in an unsafe condition, might have been remedied or the accident guarded against or averted by the exercise of the highest degree of skill then known. As against these objections, in our judgment, the authorities, without dissent, sustain the instructions. The rule adduced by Mr. Thompson, in his Commentaries on the Law of Negligence (volume 3, sec. 2722), is as follows:

"It is frequently said by the courts that such carriers are bound to exercise extraordinary care and skill to secure the safety of their passengers. This doctrine will be found in various cases embodied in such expressions as these: 'The utmost degree of care and skill in the preparation and management of the means of conveyance'; 'all precautions, as far as human foresight will go.' Another court has sanctioned an instruction which told the jury that a common carrier of passengers was bound to use greater than ordinary care—such care as is used by very cautious persons; and if any reasonable skill and care on his part could have prevented the accident the defendant was liable. 'Every person who contracts for the conveyance of others is bound to use the utmost care and skill; and if, through any erroneous judgment on his part, any mischief is occasioned, he must answer for the consequences.' 'Carriers of passengers for hire are bound to exert the utmost skill and prudence in conveying their passengers, and are responsible for the slightest negligence, or want of skill, either in themselves or their servants. They are bound to use such care and diligence as a most careful

and vigilant man would observe in the exercise of the utmost prudence and foresight.' This language, used in charging a jury, is held well sustained by the authorities. 'A carrier of either goods or passengers is bound to provide a carriage or vehicle perfect in all its parts, in default of which he becomes responsible for any loss or injury that may be suffered, provided it happened without negligence or misconduct on the part of the party injured. A carrier of passengers is bound to omit no precaution that may conduce to their safety. He is bound to guard beforehand against every apparent danger that may beset them.''

In an early Kansas case, *Union Pac. Ry. Co. v. Hand,* 7 Kan. 380, Justice Brewer concurred in a rule laid down by that court, as follows:

"Railroad companies are required to use the utmost human sagacity and foresight, in the construction of roads, to prevent accidents to passengers."

Years later, in the case of *Chicago, R. I. & P. Ry. Co. v. Brandon,* 77 Kan. 612, 95 Pac. 573, which was a derailment case, and which followed the earlier case, that court, speaking to this same question, said:

"The defendant complains that too great a burden was imposed upon it by that clause of the instruction requiring the company to show that the accident could not have been prevented by the exercise of the utmost human sagacity and foresight. The degree of care required of carriers of passengers with respect to cars and equipment applies to the roadbed and tracks (3 Thomp. Com. Law of Neg., secs. 2796, 2797; 4 Ell. Railroads, sec. 1586), and the rule so stated in the instructions was declared to be the established law of this state in *Union Pacific R. Co. v. Hand,* 7 Kan. 380, and has since been affirmed in *Topeka City Ry. Co. v. Higgs,* 38 Kan. 375, 16 Pac. 667, 5 Am. St. Rep. 754, *Mo. Pac. Ry. Co. v. Johnson,* 55 Kan. 344, 40 Pac. 641, *S. K. Ry. Co. v. Walsh,* 45 Kan. 653, 26 Pac. 45, *A., T. & S. F. R. Co. v. Elder,* 57 Kan. 312, 46 Pac. 310, and in *Railroad Co. v. Burrows,* 62 Kan. 89, 61 Pac. 439."

And where a *prima facie* case is made out in favor of a passenger injured by the derailment of a train upon which he was riding, to relieve itself of liability, that court, in the syllabus to the case last noted, said that the burden was on the company,

"in order to be relieved from liability, to show that the accident could not have been avoided by the exercise of the utmost human prudence and foresight."

Referring to the high degree of care required in such cases, the Supreme Court of Nebraska, in the case of *Spellman v. Lincoln Rapid Transit Co.*, 36 Neb. 890, 55 N. W. 270, 20 L. R. A. 316, 38 Am. St. Rep. 753, finding that they are bound to the exercise of more than ordinary care, and "that they are bound to exercise the utmost skill and prudence in conveying their passengers, and are responsible for the slightest negligence or want of skill," said that:

"This is the doctrine of the Supreme Court of the United States. In *Philadelphia & R. R. Co. v. Derby*, 14 How. 485 [14 L. Ed. 502], it is said: 'When carriers undertake to convey persons by the powerful, but dangerous, agency of steam, public policy and safety require that they be held to the greatest possible care and diligence.' This doctrine is reaffirmed by the same court in *Steamboat New World v. King*, 16 How. 469 [14 L. Ed. 1019]. See these cases cited and approved in *Indianapolis & St. L. R. Co. v. Horst*, 93 U. S. 291 [23 L. Ed. 898], where the court say, in reviewing the cases cited above: 'We desire to reaffirm the doctrine, not only as resting on public policy, but on sound principles of law.' They also cite *New York C. R. Co. v. Lockwood*, 17 Wall. 357 [21 L. Ed. 627], and quote and affirm that case as saying: 'The highest degree of carefulness and diligence is expressly exacted.' Continuing, the court say: 'The standard of duty should be according to the consequences that may ensue from carelessness. The rule of law has its foundation deep in public policy. It is approved by experience and sanctioned by the plainest principles of reason and justice. It is of great importance that courts of justice should not relax it. The terms in question do not mean all the care and diligence the human mind can conceive of, nor such as will render the transportation free from any possible peril, nor such as would drive the carrier from his business; but it does emphatically require everything necessary to the security of the passenger, and reasonably consistent with the business of the carrier and the means of conveyance employed.' "

In view of the concession made by the defendant that the establishment of the undisputed facts in reference to the death

of the plaintiff's husband established a *prima facie* case of negligence, we need not discuss instruction No. 9, which did no more than declare this liability.

Instruction No. 11 reads as follows:

"You are further instructed that if you find. from the evidence that the bridge or trestle at the place of the wreck was constructed of material which was not of the best practicable quality under the circumstances and then known to persons skilled in such work, or the material in said trestle had been allowed to materially deteriorate, or if you find that said trestle was not constructed in the manner the highest degree of human sagacity and care would suggest practicable under the circumstances and then known to persons skilled in such work, and that said accident could and would have been prevented by the use of proper materials and by the construction of the trestle in the proper manner, then your verdict should be for the plaintiff."

The exception taken to this instruction is virtually the same as that taken to the others. It is argued that it is a matter of common knowledge that many bridges are built of all iron and steel, and that for that reason such bridges are stronger than those constructed of wood, and that the instruction given above was tantamount to a peremptory instruction for plaintiff. We do not think so. The instruction here placed the same degree of burden upon the defendant to build and establish a bridge that was safe as was fixed and required in the foregoing instructions. The instruction provides, in substance, that if the jury found from the evidence that the bridge was constructed of material which was not of the best practicable quality under the circumstances and then known to persons skilled in such work, or that if the material was allowed to deteriorate, or if the same was not constructed in the *manner* (no matter what material) the highest degree of human care and sagacity would suggest practicable under the circumstances and then known to persons skilled in such work, and that the accident could and would have been prevented, had proper materials and proper methods of construction been adopted, then the verdict should be for the plaintiff. In our judgment, this instruction is without error.

An instruction similar to this was before the Supreme Court of Kansas, in the case of *Chicago, R. I. & P. Ry. Co. v. Brandon, supra,* and in discussing it, Mr. Justice Benson said:

"Complaint is also made of the sixth instruction, wherein it was stated to be the duty of the company 'to use and employ the latest and best known methods of keeping its track in good condition, including ties of the best quality of material,' and. 'if human sagacity would have suggested that by the use of ties of first-class quality such injury could have been avoided,' then the plaintiff might recover, if certain other facts were proved. It is said that the language quoted increased the duty of the company in an unwarranted manner; that to use the best quality of material that human sagacity would suggest would require a prohibitive expenditure. But the very fact that any particular material is so difficult to obtain and so expensive as to prohibit its use would also preclude its suggestion to the mind as being required for such purpose. In *Indianapolis, etc., R. R. Co. v. Horst,* 93 U. S. 291, 23 L. Ed. 898, where the instruction held the company to the exercise of 'the highest possible degree of care and diligence,' it was said by Mr. Justice Swayne that these terms 'do not mean all the care and diligence the human mind can conceive of, nor such as will render the transportation free from any possible peril, nor such as would drive the carrier from his business.' The court approved the charge, saying: "The language used cannot mislead. It well expresses the rigorous requirement of the law, and ought not to be departed from.' The courts have used varying terms in defining the duty of carriers of passengers in this respect; but there is a general concensus of the meaning which may be drawn by the average mind from the expressions used. In other instructions given, the court stated that it was the duty of the company, 'in the construction of its railway and in keeping it in proper condition for the safe transportation of passengers, to exercise the highest degree of care and skill practicable, under the circumstance, * * * but when such care and skill have been exercised, its duty to the public has been sufficiently discharged.' Again, the court said: 'But if the cause of the accident was one which the highest degree of practicable skill, care, and caution consistent with operating the road could not have provided against, then you should find for the defendant.' This expression, 'practicable skill, care, and caution,' was repeated in another place in defining the duty of the company."

A careful review and consideration of all of the different contentions of counsel convinces us that a fair trial was had; that the issuable facts were presented to the jury under proper instructions; and that the verdict is not wanting in evidence reasonably tending to support it. Under these circumstances, the judgment of the trial court must be affirmed.

TURNER, C. J., and HAYES and KANE, JJ., concur; WILLIAMS, J., absent, and not participating.