FIDELITY & CASUALTY CO. OF NEW YORK v. FIRST BANK OF FALLIS.

No. 3603.   Opinion Filed June 23, 1914.

Rehearing Denied August 11, 1914.

(142 Pac. 312.)

1.   INSURANCE—Burglary Insurance—Submission of Issues—Sufficiency of Evidence. In a suit on a contract of insurance against the burglary of a safe by the use of tools or explosives, where there is evidence that the safe was closed and locked with a time lock and combination, and that, while in such condition, it could not be opened except by the use of tools and explosives, and that next morning it was open before the time locks had run to a point permitting it to open, and the door could not be again closed without the use of emery and long and hard efforts, and that there were scratches or marks on the knob or dial of the safe, and that safes were sometimes opened by the use of blows from a heavy instrument, **held**, that such evidence was sufficient to justify the submission of the case to the jury as to whether the safe was opened by the use of tools or explosives.

2.   SAME—Action on Policy—Exemptions from Liability—Burden of Proof. Where a policy insures generally against a particular peril, and contains a further clause exempting the company from liability for loss caused in a certain manner, which would other-

wise have fallen within the general terms of the policy, the burden is upon the insurer to allege and prove that the loss fell within the exemption. Such a clause is considered as an exemption from liability and a defense rather than as an exception proper, limiting and defining the risk covered.

(Syllabus by Brewer, C.)

*Error from District Court, Lincoln County;*
*A. H. Huston, Judge.*

Action by the First Bank of Fallis against the Fidelity & Casualty Company of New York. Judgment for plaintiff, and defendant brings error. Affirmed.

*James S. Ross* and *B. W. Griffith, Jr.,* for plaintiff in error.

*Hoffman & Foster,* for defendant in error.

Opinion by BREWER, C. This suit was brought by the defendant in error, as plaintiff below, to recover on a policy insuring against burglary. The policy undertakes to insure against "all loss of money, * * * in consequence of the felonious abstraction of the same during the day or night from the safe or safes described in the said schedule and located in the banking room (also described) by any person or persons who shall have made entry into such safe or safes by the use of tools or explosives thereupon." The policy contains "general agreements" numbered from 1 to 19, both inclusive, and "special agreements" A, B, C, D, and E.

Special agreement A contains numerous exemptions from liability; the same being numbered from 1 to 9, inclusive. The number with which we are concerned is A:

"The company shall not be liable: * * * (4) For loss or damage if the assured, any associate in interest, servant or employee of the insured, or other person lawfully upon the premises is concerned in the burglary or attempted burglary as principal or accessory."

The plaintiff in error for its defense below, in addition to a general denial, set up the affirmative allegation which in substance averred: That the money was abstracted from the safe by a certain servant or employee of the plaintiff, either as prin-

cipal or an accessory. That it bases this averment upon information obtained through a diligent investigation of the circumstances attending the alleged burglary, but that it has not found and cannot aver which particular servant or employee was concerned therein, but charges that such is true upon its best information and belief. To this affirmative defense the plaintiff filed a general denial for a reply, and upon the issues thus made, the cause was tried to a jury, which returned a verdict in favor of the plaintiff, from which the defendant brings the case here on case-made, properly certified.

The record is voluminous, and likewise the briefs on file, but the two main contentions made for a reversal are: First, that there was a total failure of proof to show liability under the terms of the policy; and, second, that the court erred in placing the burden of proof on defendant upon the affirmative defense that the burglary was from the "inside" rather than from the "outside" of the bank. A decision of these two points will dispose of the case.

This is not a contract insuring generally against burglary; it only covers and indemnifies against a loss of money or other valuables, by abstracting them from the safe designated in the contract, by means of the use of tools or explosives on the safe. This means that the safe must have been opened, so that the money could be taken, through the use and application upon the safe of the instrumentalities named. If one came into possession, even feloniously, of the combination to the safe, and thus effected entrance, without the aid of tools or explosives, and by this means abstracted money, the amount thereof could not be recovered under this form of policy. So, in testing the sufficiency of the evidence, we must bear constantly in mind that the burglary must have been accomplished by the use of "tools or explosives" applied to the safe. This was the view taken by the trial judge, and the jury were carefully instructed to that effect.

1. In determining whether there was any evidence to support the finding of the jury, we must take all the evidence and

consider it in its aspects most favorable to plaintiff's contentions; and then if we find evidence, taken with all reasonable deductions and inference to be legitimately drawn from it, from which it can be fairly said that it tends to prove plaintiff's cause of action, we have no right to disturb the verdict; and nothwithstanding that, from all the evidence adduced, were the court trier of the facts, they might have found differently. *Solts v. S. W. Cotton Oil Co.,* 28 Okla. 706, 115 Pac. 776; *Moore v. First Nat. Bk. of Iowa City,* 30 Okla. 623, 121 Pac. 626; *St. L. & S. F. R. Co. v. Posten,* 31 Okla. 821, 124 Pac. 2; *C., R. I. & P. Ry. Co. v. McCulley,* 30 Okla. 178, 120 Pac. 279; *Frisco Lumber Co. v. Thomas, ante,* 142 Pac. 310.

The safe had one door which had to be rotated to close the safe; on the innerside of the door there was a time lock operated by clocks; when the door was turned in as far as it would go, two bolts, one on the right and one on the left, would automatically shoot themselves into sockets in the side of the safe. Near the outer side of the door there was one bolt which responded to an outside combination. On October 24, 1908, the time lock was set and the safe closed by rotating the door and then turning the outside combination. Next morning at an early hour a window in the building was found open, likewise the safe door, and $3,750 of money missing from the safe. The outer door knob had marks or scratches on it. The contents of the safe were scattered about the room, and other things in a general state of confusion. The safe door was open next morning, and one or more of the clocks running, and the inside bolts shot out. When these bolts were drawn back, by manipulation, the door of the safe would not close. It required the use of emery to smooth it down, and then took two men some hours to close it. This justifies the inference that the door had been sprung. The evidence shows that if the door was closed, and the time lock put on, and the combination thrown, it could not have been opened, while in this condition, save with tools or explosives. There is evidence that the safe was imperfect in that it had a three-sixteenths inch play, when

being rotated, so that the door could be turned in far enough to permit the outside combination to be thrown, and yet lack three-sixteenths of an inch of being far enough in to let the time lock bolts shoot into their sockets, and that the safe door was very hard to rotate, and it was difficult, if possible at all, to tell when it had been turned far enough in to release the time lock bolts.

There is also evidence that in opening this safe it was often necessary to use sledge hammers in pounding on its back. Also one of the expert safe men testified that safes had been opened by pounding with a heavy instrment. There is a great deal more evidence dealing with the condition of the safe at the factory, where it was later sent, including the fact that it was never after the burglary used and operated successfully, etc.; but we have briefly epitomized the points brought out upon which plaintiff relies to sustain its verdict. And we believe that there is some evidence tending to show a burglary through the use of tools or explosives. This evidence is admittedly weak and unsatisfactory; but it seems that every known fact was brought out at the trial; and outside of the physical facts relative to the condition of the safe before and after the burglary, and that the employees knew the outer combination, there is nothing tending to show any connection of an employee with the crime. If the safe was closed in such way that the time lock bolts failed to operate, and this because of defects in the construction, it would be possible to force the outside combination with tools or explosives without leaving any extensive evidence of their use. If the safe door was closed the night before and open next morning, and so badly sprung that it could not be closed, it might be fairly inferred that either a tool or an explosive had been used on it. The marks on the dial may or may not have significance; but they are in the case with the other facts, and the jury passed on their sufficiency.

The case of *Maryland Casualty Co. v. Bank of Murdock*, 76 Neb. 314, 107 N. W. 562, is strikingly in point on this question, but much weaker than the case at bar. It is there said:

"The question tried was whether or not the burglars resorted to the use of tools applied directly upon the safe. The

officer in charge of the bank testified that, on the evening preceding the night of the burglary, he locked the safe by a time lock, and no evidence was given directly to the contrary. It was the uncontradicted evidence that, if the safe had been locked, it could not have been opened, except by the use of tools or explosives. The defendant argues that, as the safe presented no marks or other signs of violence applied thereto, it necessarily results that the safe had not been locked, as the bank officer testified, and therefore no tools or explosives had been used. There was some evidence indicating that it was possible to open the safe in controversy by striking the same with a heavy hammer or other instrument after changing it to a certain position, and this evidence was sufficient, in our opinion, to submit to the jury, and for this reason the court did not err in refusing to instruct the jury to return a verdict for the defendant. We are not called upon to decide this case upon the evidence, for thereby we would usurp the office of the jury. We are only required to ascertain whether or not the proof adduced upon the trial contains sufficient evidence to justify the trial court in submitting the case to the jury, and believing it sufficient, to be consistent, we must uphold the verdict."

2. It is argued earnestly that the court committed reversible error in its instruction to the jury that the burden of proof was on defendant, as to the affirmative defense that some associate in interest, servant, employee, or other person lawfully on the premises committed or was concerned in the burglary. This defense is based on a special agreement clause exempting the defendant from liability in the event the burglary is brought within its provisions. The defendant set out this clause in the third paragraph of its answer, and issue is joined thereon in the reply. We are met at the outset with the general rule, and we think it is a well-established one, that the question of where the burden of proof lies is to be determined by the pleadings. *McClosky v. Davis,* 8 Ind. App. 190, 35 N. E. 187; *Railway v. Morgan,* 110 Ga. 172, 35 S. E. 345; *Railway v. Thomason,* 59 Ark. 140, 26 S. W. 598; *Douglass v. Hill,* 29 Kan. 527; *Bass & Harbour v. Harbour, ante,* 140 Pac. 956.

Applying this test, the burden was cast on the defendant; and, furthermore, we think the theory upon which the pleadings were drawn is correct. It was incumbent upon the plaintiff to

plead and prove, by a preponderance of the evidence, that the money was abstracted from the safe, through the use of tools or explosives thereupon; that the loss was sustained by the bank, through means coming within the general provisions of the policy. When this was done, the plaintiff had presented a *prima facie* case entitling it to recover, in the absence of any proof by defendant. It then became necessary for defendant to show that it was exempt from liability by offering proof that the burglary came within the special agreement exempting from liability. We think this view is sustained by the great weight of authorities.

The rule is thus stated in Cooley's Briefs on the Law of Insurance, vol. 4, p. 3035:

"Where a policy insures generally against a particular peril, and contains a further clause exempting the company from liability for loss caused in a certain manner, which would otherwise have fallen within the general terms of the policy, the burden is upon the insurer to allege and prove that the loss fell within the exemption. Such a clause is considered as an exemption from liability and a defense rather than as an exception proper limiting and defining the risk covered"

—citing *Western Assur. Co. v. J. H. Mohlman Co.*, 83 Fed. 811, 28 C. C. A. 157, 40 L. R. A. 561; *Catlin v. Springfield Fire Ins Co.*, 5 Fed. Cas. 310; *Blasingame v. Home Ins. Co.*, 75 Cal. 633, 17 Pac. 925, modifying *Clark v. Phenix Ins. Co.*, 36 Cal. 168. Also see other decisions there cited.

And in 16 A. & E. Enc. Law (2d Ed.) 957, it is said:

"It is generally held that it is for the insurer to show that the loss or injury was from a cause or risk specifically excepted in the policy. And the tendency seems to be to regard such exceptions as in the nature of conditions subsequent, rather than exceptions properly so-called. Accordingly it is held that, where an accident or life policy excepts losses caused by suicide, the burden of showing suicide is on the insurance company. * * * The burden is on the insurer to show that the loss or injury was caused by the negligence of the insured or that a fire loss was intentionally caused by the insured. Where the policy provides that it shall not cover death or injury caused by voluntary exposure or unnecessary danger, the burden of

proving that it did result from such exposure is upon the insurer"
—and cases cited.

Also see *Preferred Acc. Ins. Co. v. Fielding,* 35 Colo. 19,
83 Pac. 1013, 9 Ann. Cas. 916; *Travelers' Ins. Co. v. McConkey,*
127 U. S. 661, 8 Sup. Ct. 1360, 32 L. Ed. 308; *Lampkin v.
Travelers' Ins. Co.,* 11 Colo. App. 249, 52 Pac. 1040; *Cronkhite
v. Travelers' Ins. Co.,* 75 Wis. 116, 43 N. W. 731, 17 Am. St.
Rep. 184; *Jones v. Accident Ass'n,* 92 Iowa, 652, 61 N. W. 485;
*Stephenson v. Bankers' Life Ass'n,* 108 Iowa, 637, 79 N. W.
459; *Ins. Co. v. Bennett,* 90 Tenn. 256, 16 S. W. 723, 25 Am.
St. Rep. 685; *Travelers' Ins. Co. v. Sheppard,* 85 Ga. 751, 802,
12 S. E. 18; *Mallory v. Travelers' Ins. Co.,* 47 N. Y. 52, 7
Am. Rep. 410; *Couadeau v. American Accident Co.,* 95 Ky. 280,
25 S. W. 6; *Home Benefit Ass'n v. Henryetta P. Sargent,* 142
U. S. 691, 12 Sup. Ct. 332, 35 L. Ed. 1161; *Starr v. Aetna
Life Ins. Co.,* 41 Wash. 199, 83 Pac. 113, 4 L. R. A. (N. S.)
636; *Travelers' Protective Ass'n v. Gilbert,* 49 C. C. A. 309,
111 Fed. 269, 55 L. R. A. 538; *Dennis v. Union Mut. L. Ins.
Co.,* 84 Cal. 570, 24 Pac. 120; *Metropolitan L. Ins. Co. v.
McKenna,* 73 Ill. App. 283; *National Benefit Ass'n v. Bowman,*
110 Ind. 355, 11 N. E. 316; *Freeman v. Travelers' Ins. Co.,*
144 Mass. 572, 12 N. E. 372; *Hester v. Fidelity & Casualty Co.,* 69
Mo. App. 186; *Germain v. Brooklyn L. Ins. Co.,* 30 Hun (N. Y.)
535; *Latimer v. Sovereign Camp W. W.,* 62 S. C. 145, 40 S.
E. 155.

3. Some other minor points are made in appellant's brief;
such, for instance, as that directed at instruction No. 7, which
claims that its language is so framed that the jury might have
been induced to find for plaintiff, even though believing that
an employee was in collusion with the burglar. This instruction
is not fairly open to this criticism, even as it stands; but when
considered in connection with instructions Nos. 4-6 and 9, in
each of which it is clearly explained that no recovery can be
had on the policy if any employee or servant of the bank was
concerned in the burglary either as principal or accessory, the
point is without the slightest foundation.

The other instructions cover correctly the various issues and points in the case; taken separately and as a whole they are an excellent presentation of the law applicable to the issues and facts of the case.

There is no error in the record, and the judgment should be affirmed.

By the Court: It is so ordered.