### SHANNON FURNITURE CO. v. FEDERAL SURETY CO.

No. 20305. Opinion Filed Oct. 11, 1932.

Hulette F. Aby, William F. Tucker, and Frank Settle, for plaintiff in error.

Ames, Cochran, Ames & Monnett, for defendant in error.

SWINDALL, J. The plaintiff in error, as plaintiff in the trial court, commenced an action against the defendant in error, as defendant in the trial court, to recover on its "Paymaster, Messenger and Office Robbery Policy." The general indemnity provision under which recovery is sought is contained in paragraph 3 of the indemnity provisions of the policy and is as follows:

"III. To indemnify the assured for all loss by robbery committed during the hours specified in section (a) of item 7 of the declarations, of property, from within the assured's premises."

Paragraph 4 of the policy immediately follows this indemnity provision and is as follows:

"IV. The company shall have no liability under any one of the foregoing indemnity paragraphs I, II and III unless there shall be stated in the declarations a separate and specific amount specifically designated as the amount payable under such paragraph and a premium therefor. If the declarations do not show such specific amount and premium applicable to any one of such foregoing paragraphs, the company shall have no liability under the particular paragraph for which no amount and premium is designated in the declarations. The limits of the company's liability under this policy shall be the several specific amounts stated in the declarations."

Upon the face of the policy is this provision:

"This agreement is subject to the following conditions:

"Definitions A. 'Robbery' within the meaning of this policy, is limited to a felonious and forcible taking of property: (a) By violence inflicted upon the custodian or custodians in the actual care and custody of the property at the time; or (b) by putting such custodian or custodians in fear of violence; or (c) by an overt felonious act committed in the presence of such custodian or custodians and of which they were actually cognizant at the time; or (d) from the person or direct care or custody of a custodian, who, while conveying property

insured under this policy, has been killed or rendered unconscious by injuries inflicted maliciously or sustained accidentally. 'Money' as used in this policy shall mean currency, coin, bank notes, bullion, uncanceled postage and revenue stamps in current use, United States War Savings Certificate Stamps and Canada War Savings Stamps not attached to registered certificates, and 'Thrift' stamps. 'Securities' as used in this policy shall mean only such bonds, debentures, checks, coupons, demand and time drafts, promissory notes, bills of exchange, warehouse receipts, bills of lading, express and postal money orders, certificates of stock and deposit, and other instruments, as are negotiable and as respects which, when negotiated, the assured has no recourse against the innocent holder. 'Property' as used in this policy is limited to money and securities as above defined and such articles of merchandise as are actually carried in the line of business of the assured and described in the declarations. 'Custodian' as used in this policy shall mean: (1) the assured, if an individual; (2) a member of the firm, if the assured is a copartnership; (3) any officer of the assured, if the assured is a corporation; (4) any person not less than 17 nor more than 65 years of age, who is in the regular employ of the assured and duly authorized by him to act as paymaster, messenger, manager, cashier, clerk or sales person, and while so acting, to have the care and custody of property covered hereby. In no event shall a watchman or a porter be considered a custodian. 'Guard' as used in this policy shall mean any male person not less than 17 nor more than 65 years of age who accompanies the custodian by direction of the assured, but who is not a driver of a public conveyance. 'Premises' as used in this policy shall mean the interior of the assured's office, store, factory, or plant, at the location specified in item 2 of the declarations."

The declarations referred to in indemnity paragraph 3, item 7, consist of the following specifications and restrictions:

"The insurance granted under indemnity paragraph III of this policy and the premium therefor shall apply specifically as provided in sections (b) and (c) of this item, during the hours beginning at 7 o'clock a. m. and ending at 12 o'clock p. m. within the policy period.

"Section (b). On property from within the premises when at least one custodian is on duty therein * * * $1,500 — $30.38."

Effective April 12, 1926, appears the following indorsement:

"In consideration of an additional premium of $40.43, it is understood and agreed that item 6, section (b) is amended to read $3,500; item 7, section (b) is amended to read $3,500, and item 9 is amended to show the company's total liability under both items shall in no event exceed $7,000."

Item 7 of the declarations being the only item involved in this action, the other items will not be discussed.

The facts are undisputed and are briefly as follows: On the night of December 24, 1927, Grant Brown, a stockholder in and the buyer and manager for the plaintiff, left the latter's store after closing and locking the outside door. He immediately walked to his car about a block away and started to get in the car, when he discovered two men by his car with guns awaiting him. They got in the car with him and drove out about six or seven miles west of Tulsa. They drove past another car parked out there, and after passing the parked car a short distance turned and came back and drove past the parked car again and stopped about a hundred yards from it. One of the men stayed with Brown in his car and the other man went back to the parked car. In a short time three men came back to the car where Brown was held under guard by the other man, and they told Brown they wanted the combination to the safe. He denied knowing it and argued with them a little while. They informed him that they knew that he knew the combination on the safe because they saw him in the store quite a little while and had been watching him, and that they saw him working it that morning and saw him lock it up at night. So, finally he gave them the combination orally. It was not the right one. They went back to their car and talked a little while and then came back to his car and said: "I don't believe that it is the right combination, and there is going to be some fellows stay out here with you while we go up there and try it and we do not want to fool around with the wrong combination, and if it is not right it will be too bad for you." And Brown said: "You had better write it down." So they found an envelope and he gave them the correct combination and they wrote it on the envelope. They took it back and discussed it a little while, and then said: "We will go up and try it. These other fellows will stay with you." They then took Brown out of his car and to a place up the road about 50 or 75 yards and made him lie down. Two of the men stayed with him while the others went back to town. They also said that they had some fellows up there and that they did not want to detain them, that they wanted the combination

and they said the reason they wanted the right combination was that they did not want to go up there fooling around and not have it and have to come back and lose time. Brown did not see the other parties. They were gone about an hour and a half. One of the cars came back about 20 minutes before the other one did, and they came back and said they had made the robbery "O. K." The evidence shows that the safe was opened and the money taken therefrom in the sum of $1,051.40, and the cash drawers of the value of $17. At the time all this happened plaintiff held the robbery insurance policy executed by defendant, Federal Surety Company, containing the clauses above set out. The policy by its terms provides that the Federal Surety Company will indemnify the plaintiff in the amount fixed in the policy for loss by robbery committed between the hours of 7 a. m. and 12 p. m. on property from within the assured's premises when at least one custodian was on duty therein, and further provided that the word "robbery" within the meaning of the policy was limited to a forceful and felonious taking of property by violence inflicted upon the custodian or custodians in the actual care and custody of the property at the time or by putting such custodian or custodians in fear of violence, etc. It is clearly shown by the evidence that the custodian Grant Brown had left the store building and locked the store and was about a block away from the building when he was assaulted by two of the robbers and forced to drive his car into the country and give up the key to the building and the combination to the safe to the robbers, and that he was held in custody by some of the robbers while the others returned to the store, unlocked the building, and robbed the safe.

The case was tried to the court, a jury being waived, and upon the conclusion of the testimony of the plaintiff, the defendant demurred to the evidence offered by the plaintiff for the reason that the same failed to establish a liability in favor of the plaintiff and against the defendant under the plain terms and provisions of the contract of insurance. The demurrer was sustained by the court, and plaintiff has appealed. The issue for us to determine is, Was the demurrer properly sustained by the trial court?

Plaintiff in error contends, first, that it is error for the trial court to sustain a demurrer to the plaintiff's evidence unless it can be fairly said that there is no evidence, or any inferences or conclusions that may reasonably be drawn from the evidence, that would justify a judgment in favor of the plaintiff. This court in Edmisson v. Drumm-Flato Commission Co., 13 Okla. 440, 73 P. 958, held that:

"A demurrer to the evidence admits all the facts which the evidence in the slightest degree tends to prove, and all the inferences or conclusions which may be reasonably and logically drawn from the evidence. On a demurrer to the evidence, the court cannot weigh conflicting evidence, but will treat the evidence as withdrawn which is most favorable to the demurrant."

This rule in a law action has been consistently followed by this court for many years, and the defendant in error does not contend that the rule is otherwise than as above stated.

The second proposition of the plaintiff in error is that ambiguities in an insurance policy will be resolved against the insurer, and that if an insurance policy is susceptible of two constructions, the one most favorable to the assured will be adopted. This seems to be the rule in this state, and the defendant in error admits that such is the holding of this court. It is the contention of the defendant in error, however, that the law is well settled that the various provisions of an insurance policy should be considered and construed together, and a construction placed upon the policy consistent with its terms and provisions, and that the whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the others, and that to recover on an insurance policy, plaintiff must bring himself within its expressed provisions. While doubtful provisions of an insurance policy are construed in assured's favor, if its terms are unambiguous, no forced construction can be indulged to pass liability on the company. The contentions of the defendant in error seem to be in harmony with the former holdings of this court and the holding of other courts passing upon a similar proposition. Benefit Association of Railway Employees v. Mitchell, 129 Okla. 114, 263 P. 652; Brown v. Connecticut Fire Ins. Co. of Hartford, Conn., 52 Okla. 392, 153 P. 173; First Nat. Bank of Monrovia v. Maryland Casualty Co. (Cal.) 121 P. 321; Webb v. Missouri State Life Ins. Co. (Mo. App.) 115 S. W. 481; Wiest v. U. S. Health and Accident Ins. Co. (Mo. App.) 171 S. W. 570; Maryland Cas. Co. v. Ballard County Bank (Ky.) 120 S. W. 301. So, the case resolves itself into one proposition—Do

the facts bring the loss within the plain and unambiguous terms of the policy? It seems clear to us that the coverage of the policy as applied to the robbery involved in this case is on property from within the premises when at least one custodian is on duty within, and between the hours of 7 o'clock a. m. and 12 o'clock p. m. If Brown had been in the building on duty as a custodian of the property at the time he was assaulted by the two robbers and placed in fear and they had forced him out of the building and into an automobile and driven him into the country and taken his keys and combination to the safe from him in the manner disclosed by the testimony, there would be merit in the contention of plaintiff in error, but where the undisputed testimony shows that the employee of the plaintiff company, having possession of the keys to the store and the combination to the safe, had left the premises about a block and was there assaulted by robbers and driven into the country and the keys to the building and the combination to the safe secured from him by placing him in fear, such is not sufficient to bring the loss within the terms and provisions of the policy.

We, therefore, hold that the ruling of the trial court sustaining the demurrer of defendant to the evidence offered by the plaintiff was correct, and the order and judgment of the trial court is affirmed.

LESTER, C. J., and HEFNER, CULLISON, ANDREWS, and McNEILL, JJ., concur. CLARK, V. C. J., and KORNEGAY, J., dissent. RILEY, J., absent.

Note.—See under (1, 2) 26 R. C. L. 1062; R. C. L. Perm. Supp. p. 5835; R. C. L. Pocket Part, title "Trial," § 70. (4) 14 R. C. L. 926 et seq.; R. C. L. Perm. Supp. pp. 3708, 3712; R. C. L. Pocket Paft, title "Insurance," § 103.