**UNDERWRITERS AT LLOYDS, LONDON, Appellant,**

v.

**CHEROKEE LABORATORIES, INC., Appellee.**

No. 6485.

United States Court of Appeals Tenth Circuit.

March 14, 1961.

Rehearing Denied April 20, 1961.

Bryan W. Tabor, Tulsa, Okl. (Peter J. McBreen, Chicago, Ill., Rucker, Tabor, Best, Sharp & Shepherd, Joseph A. Sharp, and O. H. "Pat" O'Neal, Jr., Tulsa, Okl., were with him on the brief), for appellant.

Remington Rogers, Tulsa, Okl. (Rogers, Litchfield & Rogers and E. P. Litchfield, Jr., and Robert D. Hudson, Tulsa, Okl., were with him on the brief), for appellee.

Before HUXMAN, PICKETT and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

This suit comes to us from the Northern District of Oklahoma after a trial in which the District Court directed a verdict in favor of plaintiff-appellee allowing recovery of the sum of $89,400 for physical loss occasioned to an airplane insured by defendant-appellant. Claim is made that the trial court erred in determining that plaintiff established a prima facie case of coverage and further erred in holding that defendant did not establish a factual issue determinative of the applicability of an exclusion clause contained in the policy. Both contentions require a consideration of the proof made and applied to the policy provisions, and particularly an understanding of the quality and quantity of proof made relative to the identity of the pilot operating the aircraft at the time of loss.

On February 18, 1959, the defendant insurance company issued to plaintiff a policy of Aircraft Hull insurance which contained the presently pertinent provisions set forth below.[1] On July 2, 1959,

---

1. "Item 4.

"Use; The purposes for which the aircraft will be used are (Indicate those required.)

\* \* \* \* \* \* \*

"(B) 'Industrial Aid'

\* \* \* \* \* \* \*

"(B) 'Industrial Aid' shall mean all the uses stated in (A) also the transportation of executives, employees, guests

the subject aircraft took off from Tulsa, Oklahoma, headed for Columbus, Indiana. En route it crashed near Republic, Missouri, totally demolishing the plane and killing all aboard except a young boy who has no memory of the flight. Included among those killed were David A. Garrick and William G. Wood, Garrick being a pilot admittedly qualified as named in the policy and Wood being a pilot of considerable experience but having less than the number of flying hours designated in the policy. It is admitted that coverage was afforded if Garrick was piloting the plane at the time of the crash and that coverage did not exist if Wood was the pilot at such time. After the crash, Wood was found strapped into the left front seat of the aircraft and Garrick was strapped into the center front seat. Significance to these facts is claimed by reason of the design of the aircraft and the location and function of its controls.

The subject aircraft was a Beechcraft E–50, a two motor plane commonly referred to as a Beech Twin Bonanza. The craft is intended for operation by a single pilot and does not have dual controls except for foot pedals controlling the rudder. The plane is designed, however, so that it may be flown from either the left or right center seat. Permanent and fixed operative controls are so located as to be convenient to either seat. An exception lies in the fuel selector valves which, though possible to reach from the center front seat, are located to the left of the left front seat. The principal operating control, the wheel or stick controlling the ailerons and elevators, is of the throw-over type and may be rotated so as to be cradled by a pilot sitting in either the left or center front seat. When this control is positioned it is secured by a spring pin placed in a slot. The position of the control can be easily changed by a two-finger pull on the pin, a rotation of the wheel, and a release of the pin into the desired slot. After the crash this control was in position for use from the left front seat and was secured in place by the spring pin.

Witnesses also testified that the airplane, after giving several loud pops, stalled and went into a spin without recovery; that the main fuel tanks contained no appreciable amount of gasoline; that the auxiliary tanks contained fuel; that the fuel selector valves, located as earlier indicated to the left of the left front seat, showed the left engine on the main fuel tank and the right engine off; that the right propellor was feathered, an automatic function of the craft under certain conditions; and that the plane was equipped and capable of being flown with an automatic pilot, a device allowing the pilot to be relieved under routine flying conditions but subject to being overwhelmed by manual control if neces-

of the Insured, goods and merchandise, but excluding any operation for hire, or reward, or for instruction.

\* \* \* \* \* \* \*

"Item 5.

"The Aircraft will be operated only by the following pilot(s):

"*Name*

"Carl T. Bierdman,

"David Garrick and any properly certified private or commercial pilot with a minimum of 1,000 hours (including 100 multi-engine hours)

\* \* \* \* \* \* \*

"Insuring Agreements

"1. Coverage A—Flight, Taxying, On The Ground Or Moored

"To pay for direct physical loss of or damage to the aircraft including disappearance if the aircraft is unreported for sixty (60) days after the commencement of flight but only for the amount of each separate loss less the applicable deductible stated in Item 3 of the Declarations.

\* \* \* \* \* \* \*

"Exclusions.

"This Policy Does Not Apply:—

\* \* \* \* \* \* \*

"(d) while the aircraft is used for any unlawful purpose or is operated otherwise than in compliance with the terms of its Airworthiness Certificate and the approved operating limitations contained in its Airplane Flight Manual or other documents associated with the Airworthiness Certificate, or is being operated by any person other than the pilot(s) stated in Item 5 of the Declarations (other than Taxying by certified pilots or mechanics) or is operated by any such person in violation of the terms and limitations of his Civil Aeronautics Administration Pilot's Certificate or Medical Certificate. \* \* \* "

sary or desirable. Experts testified that the left front seat is the customary pilot's seat; that student pilots take instruction from the left front; and that traffic patterns are designed to facilitate flying from such position.

We find no merit to the defendant's contention that plaintiff did not make a prima facie case. The subject policy is not one of limited coverage insuring only against specific perils and thereby placing the burden upon the insured to show the existence of particular conditions. See Metropolitan Life Insurance Co. v. Rosier, 189 Okl. 448, 117 P.2d 793 (accidental death); Shannon Furniture Co. v. Federal Surety Co., 159 Okl. 205, 15 P.2d 22 (limited robbery); Federal Life Ins. Co. v. Firestone, 159 Okl. 228, 15 P.2d 141 (accidental death); Commonwealth Life Ins. Co. v. Brown, Okl., 259 P.2d 308; 68 A.L.R.2d 146 (accidental death during employment); United States Fidelity & Guaranty Co. v. Briscoe et al., 205 Okl. 618, 239 P.2d 754 (loss by accident). The policy declarations indicate certain named persons and certain necessary qualifications for unnamed persons to be policy-authorized pilots; the exclusion clause, by reference to such declarations, negatives application of the insurance when the plane was operated by an unauthorized pilot; and read together it seems clear that the coverage intended is general, all-risk insurance subject to suspension only when an unauthorized pilot was in control. If such was not the coverage intended, the wording of the policy providing coverage for loss from disappearance if the aircraft was unreported for sixty days would be meaningless. It follows that plaintiff did not have the burden of affirmatively showing that David Garrick was piloting the plane at the moment of disaster and that a prima facie case was made by proof of a valid existing general coverage policy and the occasion of loss under the circumstances we have narrated. Such proof is distinguishable from that made in Lineas Aereas Columbianas Express v. Travelers Fire Ins. Co., 5 Cir., 257 F.2d 150, where the insured, making claim under a similar policy, showed the plane to be in operation wholly beyond the scope of the policy. In the instant case there is nothing in plaintiff's proof to negative the application of the insurance and, to the contrary, its claim is entirely consistent with the intended coverage.

It then follows that the burden of showing that the coverage was suspended because of an unauthorized pilot in control rested with the defendant insurance company. Fidelity & Casualty Co. of New York v. First Bank of Fallis, 42 Okl. 662, 142 P. 312. And in this regard we agree with defendant that a sufficient and affirmative showing of circumstance was made to create a factual question which should have been submitted to the jury for its determination. It is now a matter of unhappy but common knowledge that the cause and circumstance of air tragedy where mass death occurs must be determined by an examination of the wreckage with an application of the physical facts discovered to expert knowledge of flight control. By the very nature of the problem the proof can seldom rise to the degree of certainty but can often surpass that of pure speculation. We deem the evidence in the instant case to be upon neither extreme level. The jury was comprehensibly informed as to the general principle of flight control; as to the design and intended function of the particular plane; the location and purpose of location of flight controls; the customs and requirements for safe operation. With such knowledge as a background, the physical findings which survived the crash such as the position of the bodies and the post-crash condition and location of the controls, when considered in view of all the circumstances, may convince or fail to convince reasonable minds upon the controversy as to the factual identity of the pilot. The weight and proper inferences to be given the evidence form a jury question.

Reversed with directions to grant a new trial.